39951. UNDERCOFLER, Commissioner v. BUCK et al.
40000. UNDERCOFLER, Commissioner v.
SUPPLY & EQUIPMENT COMPANY.

DECIDED MAY 14, 1963—REHEARING DENIED MAY 31, 1963.

*Eugene Cook, Attorney General, William L. Harper, John A. Blackmon, Assistant Attorneys General,* for plaintiff in error.

*W. Edward Swinson, T. Charles Allen,* contra.

HALL, Judge. The stipulations of fact in the present cases show that Supply, a distributor, sells milk bottles and cases to milk processors and distributors for packaging, storing, shipping, and delivering milk. Supply's customers sell milk directly to consumers, or to wholesalers who sell to consumers. The milk distributors and processors hope to use the bottles and cases more than one time; they diligently seek to have bottles and cases returned for reuse; they do not customarily require a deposit of their customers (wholesalers or consumers), but retailers who sell milk in glass bottles usually require a deposit from the consumer. In most cases the distributors and processors recover and reuse the bottles and cases. Sometimes the bottles and cases are damaged beyond reuse when returned, or are never returned. Therefore, the distributors and processors must constantly purchase new bottles for replacements to maintain their supply. The prevailing custom is to sell milk delivered at home in glass bottles, and to sell milk to stores in paper cartons costing one cent to one and one-fourth cents each; the price of milk sold by stores to customers in paper cartons is one cent higher than the price of milk sold in glass bottles.

Buck is in the business of manufacturing, producing, shipping and selling finished soft drink beverages. It sells soft drinks in glass bottles in wooden case lots. It hopes to use the bottles and cases more than one time. In most instances they are returned and reused. Buck requires its customers to deposit three cents per bottle and thirteen cents per case (85 cents per case filled with 24 bottles) to encourage customers to return the bottles and cases, and refunds the deposit on their return. (The required deposit is a little less than one-third of the cost of the bottles and cases to Buck). Sometimes when the bottles are returned they

are too damaged for reuse and no refund is made; sometimes damage preventing reuse is not apparent and refund is made for bottles that are not reused. Most of the wooden cases are returned and the deposit is refunded. Damaged cases are repaired when feasible and reused. No refund is given when a returned case is damaged beyond repair. To maintain a consistent supply Buck must continually purchase new bottles and cases to replace those not returned or damaged. In its accounting Buck's cost of maintaining a supply of bottles and cases is reflected in its "Cost of Sales." Three to five percent of Buck's product is sold in metal, non-returnable, one-use cans; its profit is less per ounce on the product so sold than its profit on sales of the product in glass bottles.

The Georgia Retailers' and Consumers' Sales and Use Tax Act (*Code Ann.* § 92-3402a) "fixes the base or measure of tax liability at three percent of retail sales" of property purchased in this State, and three percent of the cost price or fair market value, whichever is the less, of property purchased at retail outside this State. *Oxford v. J. D. Jewell, Inc.*, 215 Ga. 616, 620 (112 SE2d 601). Defining "retail sale," the act (*Code Ann.* § 92-3403a) provides:

"C. 'Retail sale' or a 'Sale at retail' means: (1) A sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, . . . (2) The terms 'sale at retail,' 'use,' 'storage,' and 'consumption' shall not include the sale, use, storage or consumption of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product nor shall such terms include industrial materials, other than machinery and machinery repair parts, that are coated upon or impregnated into the product at any stage of its processing, manufacture or conversion, nor shall such terms include materials, containers, labels, sacks or bags used for packaging tangible personal property for shipment or sale."

The only question in these cases is whether or not the sale and use of milk and soft drink bottles and cases, upon which these taxpayers have paid the tax, are covered by *Code Ann.* § 92-3403a

C (2), and therefore are not a "retail sale" or "use" as these terms are defined by the statute. Are the bottles and cases "containers" used for packaging tangible personal property for shipment or sale?

The Commissioner contends that *Code Ann.* § 92-3403a C (2) is ambiguous and that, under *Oxford v. J. D. Jewell, Inc.*, 215 Ga. 616, supra, and the authorities cited therein, it must be construed most strongly against the taxpayer and, accordingly, that the "container" provision should be held not to apply to returnable containers. The only decision of this identical question based on the theory that this provision is ambiguous was Gay v. Canada Dry Bottling Co. (Fla.) 59 S2d 788, 790, by the Supreme Court of Florida, where the language of the statute was the same as that in *Code Ann.* § 92-3403a C (2) here questioned. However, influencing the Florida Court was contemporary administrative construction of the Florida act in accord with the court's decision, and the fact that prior to the decision the legislature had amended the act specifically to provide "that the exemption as to 'materials, containers, labels, sacks and bags' applied only to those which are intended to be used one time only . . . 'The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation.' "

In Georgia we have a different situation. As the State Revenue Commissioner stated in his brief, from the passage of the Georgia act in 1951 until April 1959, "no affirmative administrative ruling was made towards enforcing the 'container' provision found in Section 92-3403a C (2). During this period a bill was introduced in the legislature to redefine the word 'containers' in terms of disposable and nondisposable containers. This bill never became law . . . From the time the Sales Tax Act was enacted (1951) until April 3, 1959, when Executive Order 59-25 was issued by the State Revenue Commissioner, no affirmative action was taken to enforce the provision." During this period the Attorney General issued opinions indicating that sales of returnable containers were not included in the measure of the tax. In 1957 the Attorney General declined to give further opinions on the question, "in view of your [the Commissioner's] acknowledged authority to make rules and regulations." Thereafter, in

1959 the Commissioner issued Executive Order No. 59-25 to the effect that returnable containers do not come within the meaning of *Code Ann.* § 92-3403a C (2). This regulation, not having been promulgated or adopted at a time contemporaneous with the adoption of the act, or within a reasonable time after beginning the administration thereof, would be entitled to little or no weight on a question of proper interpretation, even if the language were subject to interpretation. *Oxford v. Chance,* 104 Ga. App. 310, 312 (121 SE2d 825).

The same question has been decided by the Supreme Judicial Court of Maine in Coca-Cola Bottling Plants v. Johnson, 147 Maine 327 (87 A2d 667). The Maine Sales and Use Tax Law defined "retail sale" generally, as does the Georgia act, as any sale of tangible personal property "for any purpose other than for resale in the form of tangible personal property." It provided that the definition does not include "the sale of containers . . . when sold to persons for use in packing, packaging or shipping tangible personal property produced or sold by them." The Maine court stated the issue: "If the bottles were 'containers,' the purchase was not 'at retail sale' and not taxable. If the bottles were not 'containers,' the purchase was 'at retail sale' and taxable." We agree with the Maine court's answer: "It seems to us plain and clear that a soft drink bottle is a container." Coca-Cola Bottling Plants v. Johnson, supra, 669. The fact that it is not acquired for resale and is returned to the bottler for repeated use does not change its character as a container. The same question has been decided by the Supreme Court of Tennessee, where the disputed language of the statute was again the same as that of the Georgia act involved in the present cases. The Tennessee court considering the question as to milk bottles, in Evans v. Memphis Dairy Exchange, Inc., 194 Tenn. 317 (250 SW2d 547), reached the same result as the Maine court did.

In the Georgia act the word "containers" is restricted only by the phrase "used for packaging tangible personal property for shipment and sale." There is no question that the bottles and cases here in question were so used. It being clear and plain that these bottles and cases are containers, the doctrine of *noscitur a sociis* is not applicable. Coca-Cola Bottling Plants v. Johnson,

supra, 669. Decisions concerning the construction of statutes of doubtful meaning become unimportant.

Milk and soft drink bottles made of glass and cases made of wood are in no way less "containers . . . used for packaging tangible personal property for shipment and sale" than the most fragile and easily destroyed plastic or paper containers known to man.

Accordingly, we hold that the sales and uses of milk bottles and cases by Supply and of soft drink bottles and cases by Buck are not subject to the taxes imposed by the Georgia Retailers' and Consumers' Sales and Use Tax Act. It follows that Executive Order No. 59-25 of the State Revenue Commissioner, whereby the Commissioner by regulation ruled that such sales and uses of milk and soft drink bottles and cases are not excluded from the operation of the act, is inconsistent with the statute and void as applied to these taxpayers.

*Judgment affirmed. Carlisle, P. J., and Bell, J., concur.*