LONG MANUFACTURING COMPANY, SUCCESSOR TO LONG TANK COMPANY, BY MERGER v. W. A. JOHNSON, COMMISSIONER OF REVENUE FOR THE STATE OF NORTH CAROLINA.

(Filed 17 March, 1965.)

**1. Taxation § 29—**

A retailer is liable for the sales and use tax on property sold or leased by him when he fails to collect such tax from his vendee or lessee. G.S. 105-164.7.

**2. Same—**

The execution of Form E-590 by the purchaser relieves the seller of the burden of proving that the sale of tangible personal property was not a sale at retail; nevertheless it remains his duty to make reasonable and prudent inquiry in regard to the business of the purchaser, G.S. 105-164.28, and the Commissioner of Revenue may hold him liable for the sale or use tax upon proof that the sale was not for resale or lease within the purview of the statute.

**3. Same—**

The findings were to the effect that petitioner manufactured and sold propane gas tanks to propane gas companies, and that the gas companies installed some of the tanks for their customers for a flat installation fee under a contract requiring the customer to use only gas purchased from the company, retaining title to the tank in the gas company, and providing that the agreement should be terminable for breach or upon thirty days' notice. *Held:* The gas companies, in regard to the tanks so installed were not retailers or lessors as defined by statute, G.S. 105-164.3, and petitioner is liable for the sales tax on such tanks.

APPEAL by defendant from *Crissman, J.,* February 24, 1964 Term of WAKE. This appeal was .docketed in the Supreme Court as Case No. 450 and argued at the Fall Term 1964.

This proceeding was originated on May 4, 1962, under G.S. 105-241.2, when petitioner sought administrative review by the Tax Review Board of an assessment for additional sales tax made against it by the Commissioner of Revenue. The Tax Review Board, on May 20, 1962, rendered a decision sustaining the Commissioner's assessment. Petitioner then sought judicial review of the Board's decision under G.S. 143-306 *et seq.* Judge Crissman reviewed the record and, on February 24, 1964, entered a judgment reversing the Tax Review Board, adjudging that the Commissioner recover nothing of petitioner. The Commissioner appeals, assigning as error the entry of the judgment.

*Bourne & Bourne for petitioner.*
*T. W. Bruton, Attorney General, Peyton B. Abbott, Deputy Attorney General, Charles D. Barham, Jr., Assistant Attorney General for respondent.*

SHARP, J. The Tax Review Board and the Superior Court reached opposite conclusions from the same undisputed facts. This appeal presents only the question whether the facts found by the Tax Review Board support the judgment of Crissman, J.

Petitioner, Long Manufacturing Company, stands in the shoes of Long Tank Company (Tank Company) as a result of a merger of the two companies in March 1961. From January 1, 1957, through February 29, 1960, the period covered by the disputed assessment, Tank Company manufactured in Tarboro propane gas tanks which it sold to independent registered retail dealers in bottled gas (retailers). In addition to gas, these retailers also sold and rented tanks to their customers. Tank Company sold its tanks only from its manufacturing plant; it maintained no warehouse or other place of business. On the transactions here involved petitioner never collected from retailers the 3% sales tax imposed by G.S. 105-164.4. The assessment against petitioner has been made only on tanks which the retailers purchased from Tank Company and placed on the premises of their gas customers, under agreements which the Tax Review Board summarized as follows:

"(a) The dealer owns the gas equipment.

(b) The dealer agrees to install the equipment on the premises of customer.

(c) The dealer retains title to the equipment.

(d) The dealer reserves the right to remove the equipment at the termination of the agreement.

(e) The customer pays a single fee, called an 'installment charge' in some agreements, and in other agreements the fee is referred to as 'a single, non-refundable lease of equipment fee.'

(f) The customer agrees to purchase and use gas in the equipment only from the dealer.

(g) The customer agrees to pay dealer monthly for all gas purchased from dealer, with some of the agreements providing for a monthly minimum charge.

(h) The term of the agreements is almost uniformly for one year, with automatic renewal clause, and usually with right of termination upon 30 days' notice, or for breach. In case of termination there is no provision for refund and renewal is without additional charge."

In pertinent part (summarized except when quoted) G.S. 105-164.4 levies, in addition to all other taxes, a retail sales tax as a privilege or license tax upon every person who engages in the business of selling at retail or renting tangible personal property. The amount of the tax is determined by the application of the following rates against gross sales and rentals:

"(1) At the rate of three per cent (3%) of the sales price of each item or article of tangible personal property when sold at retail in this State . . .

(2) At the rate of three per cent (3%) of the gross proceeds derived from the lease or rental of tangible personal property . . . where the lease or rental of such property is an established business or the same is incidental or germane to said business . . ."

G.S. 105-164.3 defines the words and phrases used in the North Carolina Sales and Use Tax Act (Gen. Stat. ch. 105, art. 5). The definitions pertinent to this decision are quoted below (italics ours):

"(8) 'Lease or rental' means the leasing or renting of tangible personal property and the possession or use thereof by the lessee or rentee for a consideration without transfer of the title of such property.

. . .

(12) *'Purchase'* means acquired for a consideration whether

  a.  Such acquisition was effected by a transfer of title of possession, or both, or a license.to use or consume;

  b.  Such transfer shall have been absolute or conditional and by whatever means it shall have been effected; and

  c.  Such consideration be a price or *rental in money or by way of exchange or barter.*

It also includes the procuring of a retailer to erect, install or apply tangible personal property for use in this State.

(13) 'Retail' shall mean the sale of any tangible personal property in any quantity or quantities for any use or purpose on the part of the purchaser other than for resale.

(14) 'Retailer' means and includes every person engaged in the business of making sales of tangible personal property at retail, either within or without this State . . . and every manufacturer, producer or contractor engaged in business in this State and selling, delivering, erecting, installing or applying tangible personal property for use in this State notwithstanding that said property may be permanently affixed to a building or realty or other tangible personal property.
       . . .

(15) *'Sale' or 'selling' shall mean any transfer of title or possession, or both, exchange, barter, lease, or rental of tangible personal property,* conditional or otherwise, in any manner or by any means whatsoever, however effected and by whatever name called, *for a consideration paid or to be paid* . . . Provided, however, if a serviceman or repairman furnishes and attaches, annexes, installs, or affixes tangible personal property to the real or personal property of customers for a consideration, the furnishing, attachment, annexation, installation or affixation shall constitute a sale to the extent of the fair market value of the tangible personal property, furnished, attached, annexed, installed or affixed."

(The proviso quoted above was repealed on June 20, 1959, by N. C. Sess. Laws 1959, ch. 1259).

  "(16) 'Sales price' means the total amount for which tangible personal property is sold . . . Provided, however, that where a manufacturer, producer or contractor erects, installs or applies tangible personal property for the account of or under contract with the owner of realty or other property, the sales price shall be the fair market value of such prop-

erty at the time and place of such erection, installation or application . . ."

G.S. 105-164.7 requires every retailer to add the sales tax to the price of the article. Though stated and charged separately from the sales price, the sales tax constitutes a part of the purchase price. Notwithstanding that it is the intent of the law that the sales tax shall be passed on to the customer and that it not be borne by the retailer, the retailer is liable to the Commissioner for the tax if he fails to collect it from his vendee or, in a proper case, from his lessee.

After numerous audits and investigations of petitioner's sales, and, after a hearing, the Commissioner of Revenue made an assessment against petitioner in an amount in excess of $10,000.00 for uncollected and unpaid sales taxes. The assessment bears interest, but no penalty was added. During the audits petitioner obtained from the retailers executed certificates of resale, Form E-590, on the sales in question, G.S. 105-164.28; but at the time petitioner made the sales on which the Commissioner has assessed sales taxes it did not take from the retailer forms E-590. These certificates have been prescribed by the Department of Revenue as Form E-590, and are as follows:

"I (We), the undersigned, do hereby certify that the tangible personal property purchased from you is purchased as for resale unless the purchase orders specify otherwise, in which event, you are to charge the retail tax on such orders. I (We), by executing this certificate, assume liability for all sales and/or use tax due on said tangible property and agree, when same is sold at retail, or used or consumed by me (us), to remit such tax to the North Carolina Department of Revenue, Sales & Use Tax Division, Raleigh, North Carolina. This certificate is to remain in full force and effect until I (we) revoke same in writing."

The execution of Form E-590 by the purchaser relieves the seller of the burden of proving that a sale of tangible personal property is not a sale at retail. During the audits the Commissioner recognized the delayed certificates in all instances where the purchased tanks were actually sold, *i.e.*, where title passed to the customer for a consideration, and also where they were leased to customers for a cash rental. In each instance in which a tank was leased under the arrangement detailed above, however, he assessed the 3% retail sales tax against petitioner.

The Commissioner agrees with petitioner that all the sales in question were made to retailers as defined by G.S. 105-164.3(14). Retail merchants, however, may themselves make retail purchases, and, when they do, they must, like any other purchaser, pay the retail sales tax.

The crucial question here is this: Did petitioner's sale of tanks to retailers who bought them for the purpose of placing them on the premises of their retail gas customers, upon the terms summarized above, constitute a sale for any purpose other than *resale* or *rental* as those terms are used in the Sales and Use Tax Act?

Petitioner-vendor contends that the transactions between its retailers-vendees and their customers constituted a lease of the tanks, which lease is specifically subjected to the retail sales tax by G.S. 105-164.4; that petitioner's sales to the retailers were, therefore, for no purpose other than resale or rental; that the retailers should have collected the sales tax from their gas customers at the rate of 3% of the market value of the tank at the time it was installed; and that liability for the tax assessed against petitioner falls on the retailers, not on petitioner.

The Commissioner contends that, even if the transaction whereby the retailer, retaining title, agreed to furnish its customer a tank for a specified period in consideration of an installation fee and the customer's agreement to buy gas only from the retailer constituted a lease within the generally accepted meaning of that term, such an arrangement is not a lease as defined in the Sales and Use Tax Act. He argues that the Act manifests the intent of the legislature to tax the consideration received by the lessor from the lessee in the same manner as it taxes the purchase price which a vendee pays a vendor for tangible personal property and that, for a lease to be treated as a sale under G.S. 105-164.3(15), it is necessary that the consideration be paid in money or that it be measurable in money's worth. Such a lease must be "for a consideration paid or to be paid," G.S. 105-164.3(15), and the consideration may be a "rental in money or by way of exchange or barter," G.S. 105-164.3(12). Rentals are taxed "at the rate of three per cent (3%) of the gross proceeds derived from the lease or rental . . ." G.S. 105-164.4. This language clearly contemplates a rental paid periodically in cash or in commodities or services having a monetary value. Retailers' customers on whose premises they have installed tanks make no such periodic payments. The customers' only outlay in money was a single installation fee which bore no relation (1) to the purchase price, (2) to the market value of the tank, or (3) to the duration of the contract. The fee was the same irrespective of whether the arrangement between the retailer and his customer lasted a few weeks or many years. It was charged for the purpose of reimbursing the retail gas dealer in part or in whole for the installation expense and perhaps with the idea of "nailing the customer."

The words used in G.S. 105-164.3(15), "consideration paid or to be paid," do not contemplate *merely* a benefit to the promisee or a detriment to the promisor, that is, *merely* consideration in its usual legal

sense; they mean money or money's worth paid by the lessee for the use of the property. A legal detriment is not taxable. The customer's agreement to buy gas only from petitioner's vendee-retailer was, of course, a detriment to the promisor sufficient to support his contract with the retailer, but it was not rental in money or by way of exchange or barter. How could the consideration which the customer pays for the use of the tanks in question be taxed properly under the Sales and Use Tax Act? (1) It would not be equitable to tax the lessee, as petitioner would do, on the fair market value or on the *purchase price* of property which he does not own and which the lessor could remove on thirty days' notice. (2) Certain it is that the Act nowhere determines the amount of the sales tax upon personal property by *the profit* which its owner derives from its use. The retailer's profit from the lease is taxed as income. (3) The customer pays a sales tax on the gas he buys and stores in the tank, and, to be sure, the law would not expect that he pay an additional 3% tax on his gas purchases for the use of the tank.

On the basis of subsection (16) and the proviso of subsection (15) of G.S. 105-164.3, petitioner contends that the customer should pay a 3% sales tax upon the fair market value of the tank. G.S. 105-164.3(16) provides that the *sales price* of tangible property installed by a "manufacturer, producer or contractor . . . under contract with the owner of realty or other property" shall be "the fair market value of such property at the time and place of such erection, installation or application." The word "contractor" is not here used to mean any person who enters into a contract, but one who, in the pursuit of an independent business, undertakes to perform a job yet retains in himself the right to control the means, method, and manner of accomplishing the desired result. The retailers in this case do not qualify as contractors within the meaning of G.S. 105-164.3(16), nor are they servicemen or repairmen within the meaning of the proviso of G.S. 105-164.3(15), which was repealed June 20, 1959.

In effect, the retailers here are the actual users and ultimate consumers of the tanks in question. They purchased the tanks from petitioner, not for resale or for lease within the accepted meaning of that term, but as equipment which they themselves would use in the promotion of the sale of their product — gas. The contract between the retailer and his customer would appear to create a bailment rather than a lease. See *Freeman v. Service Co.*, 226 N.C. 736, 40 S.E. 2d 365; *Hanes v. Shapiro*, 168 N.C. 24, 84 S.E. 33; 8 Am. Jur. 2d, Bailments §§ 2, 21 (1963). The retailer delivered the tank to the customer for the specific purpose of storing gas purchased from him. The customer agreed to purchase gas only from the retailer, who could reclaim the tank im-

mediately upon breach of this agreement and, in any event, upon thirty days' notice. But, were the transaction a lease in the generally accepted meaning of that term, it was not a lease within the meaning of the Act. Let us suppose that after three years a retailer should remove his tank from the premises of a defaulting customer and install it upon the premises of another under the same agreement. Is it reasonable to assume that the retailer would collect from his new customer a 3% sales or use tax upon the fair market value of the tank? We apprehend that the retailer would no more attempt to collect a sales tax from the second user of the tank than he did from the first customer who "rented" the tank involved here.

In *San-A-Pure Dairy Co. v. Bowers,* 173 Ohio St. 469, 183 N.E. 2d 918, appellant (Dairy) was engaged in the production and sale of ice cream, which it sold both to wholesale and to retail dealers. Dairy bought refrigerator cases which it furnished to certain retailers. The retailers agreed in writing to use the cases exclusively for the storage and display of Dairy's ice cream, and Dairy maintained the cases. When the Tax Commissioner assessed Dairy with a sales or use tax on the equipment, Dairy contended that it was the retailers who were liable for the sales or use tax. The court held, however, that Dairy was the consumer of the refrigerator units and thus liable for the tax; that there was no transfer to the retailer for a consideration as contemplated by the sales and use tax law.

We conclude that the sales in question here were retail sales upon which petitioner should have collected the sales tax from the retailers who were not purchasing the particular property for resale or rental.

If the burden of this assessment must ultimately fall on petitioner, it was not the intent of the law that it should do so. Although, in order to prevent evasion of the retail sales tax, the law presumes that the gross receipts of both wholesale and retail merchants are taxable until the contrary is established by proper records, G.S. 105-164.26, yet, if, at the time of the sale, the vendor takes from his vendee a certificate that the property is for resale, he is relieved of this burden of proof. Notwithstanding, it is still the duty of every wholesale merchant "selling tangible personal property to a retailer for resale to make reasonable and prudent inquiry concerning the type and character of the tangible personal property as it relates to the principal business of the retailer." G.S. 105-164.28. The record discloses that on April 19, 1957, the Department advised petitioner that sales for resale did not include sales of tanks to dealers who in turn placed them on location on their customers' premises for an installment fee and pursuant to the customers' agreement to purchase gas only from the retailer, the owner of the tank.

The judgment of the Superior Court is
Reversed.