42046. UNDERCOFLER, Commissioner v. MACON LINEN SERVICE, INC. et al.

ARGUED JUNE 9, 1966—DECIDED SEPTEMBER 6, 1966.

*Arthur K. Bolton, Attorney General, Louis F. McDonald, William L. Harper, H. Perry Michael, Assistant Attorneys General*, for appellant.

*Lipshutz, Macey, Zusmann & Sikes, John H. David, Jr.*, for appellees.

EBERHARDT, Judge. ■ When the tax imposed by the Sales and Use Tax Act (Ga. L. 1951, p. 360, as amended; *Code Ann.* Ch. 92-34A) is not paid by the purchaser of tangible personal property at retail to the retailer involved in the taxable transaction, the purchaser is, by § 2 (e) of the Act, as amended (Ga. L. 1960, p. 153, 154; *Code Ann.* § 92-3402a (e)) made a dealer himself, against whom the Commissioner may assess and collect the tax.

The Commissioner contends that the purchases by Macon Linen of the cabinets and dispensers were not for the purpose of resale within the meaning of the Act and hence were taxable transactions. Section 2 of the Act, as amended (Ga. L. 1960, pp. 153, 154; *Code Ann.* § 92-3402a) levies and imposes a tax on the "retail purchase, retail sale, rental, storage, use or consumption of tangible personal property" at the rate of three per centum of the sale price. Section 3 (c) 1 (*Code Ann.* § 92-3403a C (1)) defines retail sale as "a sale to a consumer or to any person *for any purpose other than for resale* in the form of tangible personal property. . ." "Resale" is not defined, but in § 3 (b) of the Act (*Code Ann.* § 92-3403a B) "sale" is defined as meaning "any transfer of title or possession, or both, exchange, barter, *lease or rental*, conditional or otherwise, in any manner or by any means whatsoever of tangible personal property *for a consideration*. . ." "Lease or rental" is defined by § 3 (c) 3 (c) (*Code Ann.* § 92-3403a G) to mean "the leasing or renting of tangible personal property and the possession or use thereof by the lessee or rentee *for a consideration*, without transfer of the title of such property." (Emphasis supplied in each instance).

Counsel for Macon Linen have treated "rental" as being the equivalent of "resale" for the purposes of § 3 (c) 1 of the Act (*Code Ann.* § 92-3403a C (1)). We agree, but we do not find that "rentals" or "resales" of the cabinets and dispensers, within the meaning of the Sales and Use Tax Act, occurred in the transactions between Macon Linen and its customers.

In Long Mfg. Co. v. Johnson, 264 N. C. 12 (140 SE2d 744), bottled-gas retailers purchased and installed tanks on their customers' premises under agreements similar to those of Macon Linen with its customers. Under these agreements the gas retailer owned, installed, and retained title to the propane gas tanks and could remove them at the termination of the agreement. The customer agreed to purchase gas exclusively from the retailer installing the tanks and to pay monthly for gas supplied and stored in them. In addition the customer paid a single fee called "an installment charge" or "single, nonrefundable lease of equipment fee" and also paid sales tax on gas bought and stored in the tank. No separate charge was made for the use of the tanks other than the one installment fee. Under statutes similar to those here involved, the Supreme Court of North Carolina held that the sales of the tanks to the bottled-gas retailers were retail sales rather than resale or rental and hence were taxable transactions under the Sales Tax Act.

The definition of "sale" in the North Carolina statute included the requirement that it be "for a consideration paid or to be paid." In discussing this requirement, the Supreme Court of North Carolina stated: "The words . . . 'consideration paid or to be paid,' do not contemplate *merely* a benefit to the promisee or a detriment to the promisor, that is, *merely* consideration in its usual legal sense; they mean money or money's worth paid by the lessee for the use of the property. A legal detriment is not taxable. The customer's agreement to buy gas only from [the bottled-gas retailer who installed the tanks] was, of course, a detriment to the promisor sufficient to support his contract with the retailer, but it was not rental in money or by way of exchange or barter." The court further stated that "[i]n effect, the retailers here are the actual users and ultimate consumers of the tanks in question. They purchased the tanks from petitioner, not for resale or for lease within the accepted meaning of that term, but as equipment which they themselves would use in the promotion of the sale of their product—gas."

A similar case is San-A-Pure Dairy Co. v. Bowers, 173 Ohio St. 469 (183 NE2d 918). San-A-Pure was engaged in the produc-

tion and sale of ice cream which it sold both to wholesale and retail dealers. San-A-Pure bought refrigerator cases or cabinets which it furnished to retailers of its product who agreed in writing to use the cases exclusively for the storage and display of San-A-Pure's ice cream. San-A-Pure's cabinets were installed, removed on occasion and serviced by it at no cost to the users; and San-A-Pure's employees stocked the cabinets, sometimes arranged the packages and took away old or spoiled ice cream. San-A-Pure retained ownership of the cases or cabinets and neither made a direct charge for their use nor increased the cost of the ice cream to the retailers above the prevailing wholesale price; but those retailers who used their own cabinets in the display and sale of San-A-Pure's ice cream were given a discount of ten cents per gallon on the ice cream they purchased, which deduction was listed and treated as a rebate.

The Ohio statute defined "sale" to "include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted . . . for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever . . ."

San-A-Pure contended that the cases were actually resold by it to the retailers of the ice cream on the basis that possession was transferred to the retailer for a consideration and hence, since a resale occurred, the original purchase of the cases was a purchase for resale and therefore excluded from the operation of the sales and use tax act.

The Supreme Court of Ohio held, however, that San-A-Pure was the "consumer" of the cases; that there was no transfer to the retailer for a consideration as contemplated by the sales and use tax act; and that the rebate of ten cents per gallon to the retailers who used their own cases did not operate to show a sale of the cases furnished the retailers.

In the course of the opinion the Ohio court stated that "[i]t is to be emphasized that these retailers were not billed and charged for the use of [San-A-Pure's] equipment, and that they paid only the prevailing wholesale price for the ice cream they

received." And, "[t]he mere fact that the cost of the cases or cabinets supplied retailers by [San-A-Pure] may be included in the price of the ice cream sold them is not sufficient to constitute a sale of such equipment within the intendment of [the Ohio statute quoted above defining 'sale'], and that the use of its cases or cabinets by the retailers in their stores was not the kind or character of consideration contemplated by the statute."

In Commonwealth v. Benjamin Franklin Hotel Co., 77 Dau. 4, 28 D&C2d 329 (Pa., Dauphin Co.), it was held that the purchase of window air conditioners and television sets for use in the hotel rooms rented to guests was not a purchase for the purpose of resale within the meaning of the sales and use tax act, especially where the room rentals did not include any separate charges for the use of the appliances. The Pennsylvania statute defined "resale" as "[a]ny transfer of ownership, custody or possession of tangible personal property for a consideration, including the grant of a license to use or consume. . ." As to the requirement of consideration, the court held that "[w]hen the rooms were rented to guests, there was no payment for the television sets or air conditioners as such. The charges and payments were for the rooms as a whole including all the other furnishings that went with them. We think that no more was consideration paid—the equivalent of a purchase price—for these individual items than there was for the materials in the McHugh case. And since there was no consideration, there was not a resale of these items. Hence, in our judgment, the television sets and air conditioners were not acquired for the purpose of resale. On the contrary, they were purchased at retail and the sales and use tax was properly assessed."

Both § 3 (b) of the Act (Code Ann. § 92-3403a B) defining "sale" and § 3 (c) 3 (c) (Code Ann. § 92-3403a G) defining "lease or rental" require that such transactions be "for a consideration." Under the circumstances here and in light of the above cases we do not find that in the transactions between Macon Linen and its customers the items in question were transferred, sold or rented "for a consideration" within the meaning of the Sales and Use Tax Act. No separate charge was made for the use of the cabinets and dispensers; and, a fortiori, no

"installment charge" or "single, non-refundable lease of equipment fee" was made as in the Johnson case, supra, nor was there any "rebate" or deduction as in the San-A-Pure case, supra.

To paraphrase the language of the court in the San-A-Pure case, supra, the mere fact that the cost of the cabinets and dispensers supplied its customers by Macon Linen may be included in the rental price of the towels, linens, etc. is not sufficient to constitute a sale or rental of the equipment within the meaning of §§ 3 (b) and 3 (c) 3 (c) of the Act (*Code Ann.* §§ 92-3403a B and 92-3403a G). The cabinets and dispensers were equipment which Macon Linen used in the promotion of its business, and it was the actual user and ultimate consumer. No doubt all costs of Macon Linen's operations are reflected in the rental or contract price charged its customers, including the costs of washing compounds, starch, detergents, soaps, bleaches, transportation equipment, machinery, etc., as well as the costs of the cabinets and dispensers. But this circumstance does not in itself operate to show a "resale" or "rental" of these items so as to render their sale to Macon Linen other than a taxable transaction.

Recently the Supreme Court of this State in *Americana Motor Hotel Corp. v. Undercofler,* 222 Ga. 295 (149 SE2d 691) dealt with the problem of whether the operator of a hotel must pay the sales tax on soap, paper, towels, linens, carpets, furniture, television sets, and other items of tangible personalty included in the rooms rented to its guests. The taxpayer contended that these were resold to the guests in the renting of the rooms, and thus the tax could not be applied to the purchase price which it had paid in acquiring them. Holding the tax to be applicable the court asserted: "Actually, the plaintiff itself used the property to make its rooms livable, and thus rentable to guests, and the fact that a part of the charge for the rooms was allegedly attributable to such property does not cause such use of it to be a resale. Although the plaintiff's guests also used this property while occupying the rooms, they used it as a part of the rooms which they rented, not independently." *Undercofler v. Eastern Air Lines, Inc.,* 221 Ga. 824 (2b) (147 SE2d 436) holding that the price of pre-prepared meals purchased by the air line and furnished to passengers with the cost being included in the price of

the ticket for passage, was not taxable, was distinguished because there was a resale to the passenger, the price being a known amount. Moreover, the consumption of the meals was not by the air line, but by the passenger.

Cited as comparable situations were *Craig-Tourial Leather Co. v. Reynolds,* 87 Ga. App. 360 (2) (73 SE2d 749) and *Troup Roofing Co. v. Dealers Supply Co.,* 91 Ga. App. 880 (5) (87 SE2d 358), which we think are likewise comparable here.

Macon Linen contends, however, that the purchase of cabinets and dispensers is not taxable because such items are "containers" within the meaning of § 3 (c) 2 of the Act (*Code Ann.* § 92-3403a C (2)). This section provides that "[t]he terms 'sale at retail,' 'use,' 'storage,' and 'consumption' shall not include . . . containers . . . used for packaging tangible personal property for shipment or sale." In support of this contention *Undercofler v. Buck,* 107 Ga. App. 870 (132 SE2d 157) is cited. That case, however, dealt with milk bottles and cases and soft drink bottles and cases and has no application to the case sub judice.

The stipulation of fact entered into by the parties recites that "[c]abinets and dispensers are purchased by Macon Linen and installed on the premises of the rentee by Macon Linen to hold and dispense linen towels to customers, such towels being designed for use and dispensing by and in conjunction with such cabinets and dispensers." Assuming that the cabinets and dispensers are "containers," we conclude that their function is for storing and dispensing for use rather than for packaging for shipment or sale. The empty cabinets and dispensers are not returned to Macon Linen, refilled with towels, and sent again to the customers refilled[1] but are "installed on the premises of

---

[1]It is interesting to note that in *Undercofler v. Buck,* 107 Ga. App. 870 (132 SE2d 157) the contention was made by the Commissioner that *Code Ann.* § 92-3403a C (2) is ambiguous and must be construed most strongly against the taxpayer. Accordingly, it was contended that the "container" provision should be held not to apply to returnable and reusable containers. The court quoted from Gay v. Canada Dry Bottling Co., (Fla.) 59 S2d 788, 790, where, as the court stated, "the language of the

the rentee." We hold that the cabinets and dispensers are not containers used for packaging personal property for shipment or sale within the meaning of § 3 (c) 2 of the Act (*Code Ann.* § 92-3403a C (2)).

The tax was properly applied to these items.

■ Macon Linen contends that its purchases of starch, washing compounds, detergents, soap, bleach and like items are not taxable because "[t]he terms 'sale at retail,' 'use,' 'storage,' and 'consumption' shall not include . . . industrial materials . . . that are coated upon or impregnated into the product at any stage of its processing, manufacture or conversion . . ." § 3 (c) 2, as amended (Ga. L. 1953, p. 194; *Code Ann.* § 92-3403a C (2)). The Commissioner contends that Macon Linen is not engaged in processing, manufacturing, or converting· industrial materials into a new and different product as contemplated by this section of the Act but that the soap and other materials are consumed in the laundering operations and do not become a part of the property to be rented.

Macon Linen treats the central issue as being the application of the statutory term "processing" to the laundering operations

statute was the same as that in *Code Ann.* § 92-3403a C (2) here questioned. However, influencing the Florida court was contemporary administrative construction of the Florida Act in accord with the court's decision, and the fact that prior to the decision the legislature had amended the Act specifically to provide 'that the exemption as to "materials, containers, labels, sacks and bags" applied only to those which are intended to be used one time only . . . "The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation." ' " The Florida case was distinguished on the ground that from passage of the Act in 1951 until 1959 no administrative ruling was made toward enforcing the "container" provision and that during this period a bill was introduced to redefine the word "container" in terms of disposable and nondisposable containers, but which was never passed and never became the law.

Georgia L. 1964, p. 206, enacted subsequent to the *Buck* case, added a packaging qualification as follows: "To qualify for the packaging exemption, such items shall be used solely for packaging and shall not be purchased for reuse."

and contends that the "ordinary and usual signification" of "processing" is the "processing [sic] of commodities to a condition for sale." In support of this contention several cases are cited in which various activities have been held to be "processing" within the meaning of sales tax exemptions provided for the processing of products: i.e., power and sound amplifiers used to produce electricity for broadcasting radio and television programs, State v. Television Corp., 271 Ala. 692 (127 S2d 603); water softeners used by hotels and restaurants to soften water, Kress v. Dept. of Revenue, 322 Mich. 590 (34 NW2d 501); use of electricity in quick freezing and storing of butter, eggs and cheese, Fischer Artificial Ice & Cold Storage Co. v. State Tax Commn., 248 Iowa 497 (81 NW2d 437); washing, cleaning, drying, candling, sizing, weighing, oiling, crating and shipping of eggs, Northwestern Ohio Poultry Assn. v. Schneider, 2 Ohio St. 34 (205 NE2d 905). Laundry and dry cleaning plants are held to be "industrial operations" in Calvert v. Austin Laundry & Dry Cleaning Co., (Texas Civ. App.) 365 SW2d 232.

These cases are not in point here, however, and are not applicable for the additional reason that the statutes involved in them typically provide for materials for "consumption or use in processing" or materials "used in processing." None of those statutes has a requirement that the materials be "coated upon or impregnated into the product," as does ours.

We do not think that the materials in question could be said to be "coated upon" the linens. Consequently the question becomes whether the materials are "impregnated into the product at any stage of its processing, manufacture or conversion" within the meaning of the Sales and Use Tax Act.

The stipulation of fact entered into by the parties recites that "[i]n the laundering operation the dirty linens are washed, bleached, starched, dried and ironed and at various stages of this operation the linens become saturated with starch, washing compounds, detergents, soaps and bleaches. Starch remains in the clean linen until the linen is laundered again but none of the other materials used in the laundering operation remain in the clean linen."

While we find no authority helpful in defining "impregnated

into" as used in the Sales and Use Tax Act, our view is that it requires that the material remain in the product, for some time at least, after it leaves the hands of the processor; otherwise the legislature would have simply excluded industrial materials "used or consumed" in processing. Indeed, prior to the amendment of 1953, the statute did provide for the exclusion of "industrial materials . . . used directly in the . . . processing of articles. . ." Ga. L. 1951, pp. 360, 365. The amendment (Ga. L. 1953, Jan. Sess., p. 194), however, substituted for this language the "coated upon or impregnated into" requirement, thus evidencing the intention of the legislature that materials merely used in processing should not be excluded from the operation of the Act. Accordingly, we hold that since starch is the only material stipulated to remain in the linen, all other materials used in the laundering operations do not fall within the exclusion of § 3 (c) 2, as amended (*Code Ann.* § 92-3403a C (2)).

As to the starch, we doubt that it can be said to be "impregnated into" the linen since it remains in the linen only until the next laundering operation. "Impregnated into" would seem to us to imply some greater degree of permanence.

But assuming for the purpose of argument that starch is an "industrial material" and that it is "impregnated into" the linen, we do not think that Macon Linen, in its laundering operations, is engaged in the *processing of a product* as contemplated by the statute. The product has already come into existence by "processing, manufacture or conversion" when it is sold to Macon Linen. It has been prepared and made ready for market; thus by Macon Linen's own definition—"processing of commodities to a condition for sale"—the linens, towels etc. have been "processed" before acquisition.

"Certainly, the popular conception of manufacturing or processing does not come to mind when a shirt is laundered or a suit is cleaned." Pellerin Laundry Machinery Sales Co. v. Cheney, 237 Ark. 59, 63 (371 SW2d 524). We hold that the laundering operations are in the nature of maintenance or service operations and that the starch is not "impregnated into the product at any stage of its processing" within the meaning of § 3 (c) 2, as amended (*Code Ann.* § 92-3403a C (2)).

The purchase of these items, too, was subject to the tax.

*Judgment reversed. Bell, P. J., and Jordan, J., concur.*