42272. UNDERCOFLER, Commissioner v. COLONIAL STORES, INC.

ARGUED SEPTEMBER 7, 1966—DECIDED SEPTEMBER 28, 1966—REHEARING DENIED OCTOBER 13, 1966—

*Arthur K. Bolton, Attorney General, William L. Harper, Louis F. McDonald, Assistant Attorneys General,* for appellant.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, George B. Haley, Jr., G. Kimbrough Taylor, Jr.,* for appellee.

EBERHARDT, Judge. ■ Taxpayer in its brief poses the ultimate question for decision as whether or not the Sales and Use Tax Act (Ga. L. 1951, p. 360 as amended; *Code Ann. Ch.* 92-34A) authorizes the imposition of two taxes on a single sale or transaction. We do not reach this question because it does not appear that two taxes are imposed on a single sale or transaction.

Assuming for purposes of this division of the opinion that a taxable "sale" occurred at some point in the trading stamp scheme whereby Colonial Stores, the taxpayer, issued trading stamps to its customers which it later redeemed for premium merchandise, it is apparent that this transaction is separate and distinct from the sale of the premium merchandise to Colonial. In the latter transaction, Colonial, the taxpayer, is the buyer; in the former it is the "seller." Since identity of parties does not appear, further demonstration of the separate and distinct nature of the two transactions is deemed unnecessary. We observe in passing, however, that a tax-imposed economic burden falls upon taxpayer only in the transaction in which it is the buyer of the premium merchandise. The economic burden of the tax measured by taxpayer's gross receipts falls upon its customers.

■ The real issue in this case is whether a "sale" by taxpayer to its customers of the premium merchandise occurred in the trading stamp scheme. If so, then the sale to taxpayer of the premium merchandise would have no tax consequences since it would be a sale for resale and hence not a "retail sale" as defined by Section 3(c)1 of the Act (*Code Ann.* § 92-3403a C (1)).[1]

---

[1] "C. 'Retail sale' or a 'Sale at retail' means: (1) A sale to a consumer or to any person for any purpose *other than for resale*

In determining whether there was a "sale" by taxpayer to its customers of the premium merchandise we are bound by the definition as contained in Section 3(b) of the Act: " 'Sale' means any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever of tangible personal property *for a consideration. . .*" (*Code Ann.* § 92-3403a B). (Emphasis supplied). The Commissioner contends that no sale occurred because there was no consideration in a sales-and-use tax sense for the stamps or premium merchandise. He urges that sales promotion is the objective of the trading stamp scheme and that taxpayer bought the merchandise not to resell but to give away as part of a scheme for advertising and promoting the sale of groceries.

In deciding whether the requirement of consideration has been met, we extract the relevant facts from the stipulation: (1) the trading stamps were issued to taxpayer's customers "in consideration of purchases made by [taxpayer's] customers"; (2) the cost of the premium merchandise to taxpayer "was a cost of its doing business, and like all other costs of doing business was reflected in the retail price which [taxpayer] charged its customers for food and other items purchased at its supermarkets"; (3) at the time of sale of food and other items in taxpayer's retail stores and at the time of issuance of the stamps in connection with the sale, "no separate charge was made and no separate cash register receipt made for the stamps issued in connection with the sale"; (4) if a customer of one of taxpayer's retail stores for some reason did not receive the stamps, no reduction was made by taxpayer in the total price of goods sold to such customer[2]; (5) taxpayer received no consideration for

---

in the form of tangible personal property. . ." (Emphasis supplied).

[2]It was also stipulated that taxpayer frequently issued "bonus" trading stamps, i.e., a number of stamps greater than the customary number of ten stamp units for each dollar of sales, in consideration of the purchase of a particular item the sale of which taxpayer desired to promote. Taxpayer also on occasion offered and issued to customers or potential customers a certain

the premium merchandise other than the stamps which were redeemed with the merchandise.

Under these circumstances wo do not think the requirement of consideration is met. A comparison of *Undercofler v. Eastern Air Lines,* 221 Ga. 824 (147 SE2d 436) with *Atlanta Americana &c. Corp. v. Undercofler,* 222 Ga. 295 (149 SE2d 691) and *Undercofler v. Macon Linen Service,* 114 Ga. App. 231 (150 SE2d 703) foreshadows this result.

In *Eastern,* the air line purchased prepared meals to serve to its passengers on the flight. No separate charge was made to the passenger for the meal, but the price of the meal was included in the cost of the ticket. The Supreme Court held that a sale of the meal occurred when the ticket was purchased, the passenger impliedly consenting to delivery during the flight.

In *Americana,* it was contended that furniture and other items of tangible personal property included in rooms rented to guests were sold or rented to the guests so as to make their sale to taxpayer a sale for the purpose of resale. In rejecting this contention the Supreme Court stated, ". . . the fact that a part of the charge for the rooms was allegedly attributable to such property does not cause such use of it to be a resale." *Eastern* was distinguished in this language: "[In *Eastern*] this court held the air line's service of meals to its passengers to be a resale of such meals although no separate charge was made for them. However, there it was alleged that the air line bought the meals already prepared and that the price of the meals was included in the cost of the tickets. The court concluded from such allegations that the price of the prepared meals was a known amount and hence separable from the charge made for transportation."

In *Macon Linen,* the taxpayer was engaged in the rental of towels, linens and similar items to its customers. Cabinets and dispensers were purchased and installed by taxpayer on

---

limited number of stamps, known as "free" stamps, without any purchase being required in order to receive the stamps. However, taxpayer eliminated from its claim for refund an amount equal to three percent of the cost to taxpayer of the premium merchandise distributed in redemption of "bonus" and "free" stamps.

the customer's premises for holding and dispensing the towels. No separate charge was made, however, for the use of the cabinets and dispensers in connection with the towel rentals. Under these circumstances this court held that the element of consideration was lacking. We stated there that ". . . the mere fact that the cost of the cabinets and dispensers supplied its customers by Macon Linen may be included in the rental price of the towels, linens, etc., is not sufficient to constitute a sale or rental of the equipment. . . No doubt all costs of Macon Linen's operations are reflected in the rental or contract price charged its customers, including the costs of washing compounds, starch, detergents, soaps, bleaches, transportation equipment, machinery, etc. as well as the costs of the cabinets and dispensers. But this circumstance does not in itself operate to show a 'resale' or 'rental' of these items so as to render their sale to Macon Linen other than a taxable transaction."

The approach taken by the Supreme Court and this court, where the "consideration" required by Section 3(b) is not separately stated or is not a known or separable amount, has been to inquire into the nature of the transaction and the purpose or objective of the taxpayer with respect to the property contended to be "sold." In both *Americana* and *Macon Linen* the earmarks of a sale were not found, and the taxpayers were treated as the consumers of the property. Thus the Supreme Court stated in *Americana,* 222 Ga. 295, 300, supra: "Actually, the plaintiff [taxpayer] itself used the property to make the rooms livable, and thus rentable to guests. . . Although the plaintiff's guests also used this property while occupying the rooms, they used it as a part of the rooms which they rented, not independently. Not many of them would have cared to use the rooms without any of the items mentioned." And in *Macon Linen,* 114 Ga. App. 231, 237, supra, this court stated: "The cabinets and dispensers were equipment which Macon Linen used in the promotion of its business, and it was the actual user and ultimate consumer."

It will be observed that in *Americana* the furnishing of the furniture and other items had no significance independent of the

room rentals; in *Macon Linen* the furnishing of the cabinets and dispensers had no significance independent of the rental of towels and linens.

In the case under review it does not appear that the furnishing of trading stamps redeemable for premium merchandise has any significance independent of the sale of groceries and other items. As the Commissioner contends, promotion of the sale of groceries appears to be the objective of taxpayer rather than the sale of premium merchandise.[3]

In accord with what we here hold is Hornof v. Kroger Co. (Ill.), 219 NE2d 512, 6 State Tax Cas. ¶ 250-003. In that case a statute explicitly applied to transactions where trading stamps were redeemed for items of personal property, the statute declaring that redeemers shall be deemed to be engaged in the business of selling such property at retail and shall be liable for a tax based on the retail value of the property transferred upon redemption of the stamps. A theory of double taxation in regard to the stamp-saver was advanced based on the premise that the stamps were sold by the merchant to the stamp-saver upon which transaction a tax was imposed. The Illinois Supreme Court rejected the contention that double taxation resulted when a tax was again exacted at the stamp redemption store, holding that since no separate charge was

---

[3]For cases characterizing the trading stamp scheme as an advertising or promotional device see *Hewin v. City of Atlanta*, 121 Ga. 723 (49 SE 765, 67 LRA 795, 2 AC 296); State Tax Commn. v. Ryan-Evans Drug Stores, 89 Ariz. 18 (357 P2d 607); and Benner Tea Co. v. State Tax Commn., 252 Iowa 843 (109 NW2d 39). Taxpayer asserts that these cases are not in point because they do not involve the issuance of trading stamps by merchants who are self-redeemers. We note from the Commissioner's brief and oral argument that different tax treatment is given the third-party-redeemer situation, the Commissioner adhering to the view that the third-party redeemer purchases for resale and that the act of redeeming is a taxable transaction. We make no comment as to any distinction between the two situations, but we do recognize that *Hewin* was not a sales tax case and that Ryan-Evans and Benner Tea Co. dealt with a "discount" problem rather than a "resale" problem.

made by the merchant for stamps, and no reduction was made in the selling price if the customer declined the stamps, and title to the stamps did not pass from the trading stamp companies, there was no consideration and no change of title and hence no sale of the stamps.

Although this case involved a third-party-redeemer situation, which taxpayer contends is distinguishable from the self-redeemer situation, we think it nevertheless stands for the proposition that where no separate charge is made by the merchant for the stamps, and no reduction is made in the selling price if the customer does not receive the stamps, there is no consideration, within the meaning of the Sales and Use Tax Act, for the issuance of the stamps. Implicit in what we here hold is that if there is no consideration for the taxpayer's issuance of the stamps there is no consideration for the taxpayer's redemption of the stamps which it has itself issued.[4]

Taxpayer cites State Tax Commn. v. Consumers Market, 87 Ariz. 376 (351 P2d 654); Morton Pharmaceuticals, Inc. v. MacFarland, 212 Tenn. 168 (368 SW2d 756); and May Dept. Stores v. David, No. 16197, Cole County, Mo. (Feb. 27, 1964), a copy of which was attached to its brief. The Consumers Market case begs the question here presented in that it was there stipulated that the premium merchandise was purchased by taxpayer for resale. In the Morton Pharmaceuticals case the customers of taxpayer were offered a choice of purchasing the same line of pharmaceuticals from either of two price lists, purchases from the list with higher prices giving the customer the opportunity to accumulate credits toward premiums described in a catalog distributed by taxpayer. The May case is not an appellate court case and is not approved insofar as its rationale may indicate that the stamp scheme in the case under review constitutes a "sale" within the meaning of our statutes.

We hold that the purchase of the premium merchandise by taxpayer was, as stipulated, "a cost of its doing business" and

---

[4]We express no opinion as to whether trading stamps would satisfy the requirement of consideration in the redemption transaction in the case of a third-party redeemer.

was not a purchase for resale. The purchase of the premium merchandise by taxpayer was thus a taxable transaction.

*Judgment reversed. Bell, P. J., and Jordan, J., concur.*