BROWNING-FERRIS INDUSTRIES, INC. *vs.* STATE TAX
COMMISSION.[1]

Suffolk. March 7, 1978. — May 24, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Taxation*, Sales tax: exemption.

Evidence that a rubbish removal business provided special containers to
some customers and made a container service charge in addition to
charges for pick-ups and disposals warranted a finding by the Ap-
pellate Tax Board that the service charge was for rental of the con-
tainers which constituted a sale under G. L. c. 64H, § 1 (12) (*a*), and
was therefore taxable under c. 64H, § 2. [326-330]

Service charges made to customers of a rubbish removal business for the
supplying of special containers were not exempt from sales tax as an in-
consequential sales element of an essentially personal service transac-
tion under G. L. c. 64H, § 1 (13) (*c*). [330-331]

Service charges made to customers of a rubbish removal business, which
was a common carrier, for the supplying of special containers were not
exempt from sales tax as "sales of transportation or communication
services" under G. L. c. 64H, § 1 (13) (*b*). [331]

APPEAL from a decision of the Appellate Tax Board.

*Timothy F. Fidgeon* for the taxpayer.

*John F. Hurley*, Assistant Attorney General, for the State
Tax Commission.

KAPLAN, J. At issue is an assessment of sales tax under
G. L. c. 64H on the rental of certain rubbish containers.
The taxpayer's business was rubbish removal. Three meth-
ods were used to collect rubbish from customers: (1) the
manual emptying into the taxpayer's trucks of conventional

---

[1] The named appellant, Browning-Ferris Industries, Inc. (R. F. Law-
rence Division), is the successor by merger to the R. F. Lawrence Truck-
ing Co., Inc., which was the taxpayer during some of the years here rele-
vant.

barrels and the like; (2) the pick-up of rubbish with hydraulic front-end and rear-end loaders; and (3) the "roll-off" method which gave rise to this controversy.

Roll-off customers were provided by the taxpayer with special containers for the deposit of their trash. These weighed 4,000 pounds empty, were five feet high, eight feet wide, and twenty-two feet long, and held twenty-five cubic yards of matter. Trucks appropriately equipped would come to carry away full containers and replace them with empties. Sometimes a container would be emptied and then returned to the same customer, but the containers did not have any individually identifying characteristics.

Customers using the roll-off method received monthly invoices listing two charges. One charge, termed "slips," was a variable figure representing the sum of charges for the month's pick-ups and disposals. The other monthly charge was deemed a "service" charge by the taxpayer (and was specified as "container service charge" on an invoice to be found among the exhibits). The latter charge was held by the State Tax Commission to be one for rental of the roll-off containers on which the taxpayer should have collected and remitted sales tax under the following provisions of law: G. L. c. 64H, § 2, imposing an excise "upon sales at retail of tangible personal property"; and § 1 (12) (*a*) defining "sale" to include "[a]ny transfer of title or possession, or both, exchange, barter, lease, rental, conditional or otherwise, of tangible personal property for a consideration, in any manner or by any means whatsoever."

The taxing authorities' view of the question was first stated in 1967 in response to a request by the Massachusetts Rubbish Haulers Association for a ruling. The then Commissioner of Corporations and Taxation assumed the facts of the roll-off method just described, and responded that a separate charge "for the use of the container . . . is taxable under the sales and use tax law and the haulers are required to collect the tax thereon. If, however, there is only one charge for the container, transportation and dumping with no separation thereof, the charge would not be subject to

tax. The container charge incorporated therein would be exempt under [G. L. c. 64H, § 1 (13)] as an inconsequential [sales] element [of an essentially personal service transaction] for which no separate charge is made." The precise statutory text referred to was that part of § 1 (13) which states that "[s]ale at retail" shall not include "(c) . . . personal service transactions which involve . . . sales as inconsequential elements for which no separate charges are made."

Accordingly, when the present taxpayer elected not to make a single comprehensive charge and failed from April, 1966, through September, 1973, to collect and pay over sales taxes on the separate so called "service" charge to its customers, the State Tax Commission (commission) sent notice of intention to assess $16,227.36 of taxes, interest, and penalties. The taxpayer paid the assessment and duly filed applications for abatement. Abatement was denied by the commission on November 8, 1974, and, on appeal, by the Appellate Tax Board (board) in October, 1976. The case, including the board's findings, report, and opinion of August 1, 1977, comes to this court by direct appeal under G. L. c. 58A, § 13. Here the taxpayer renews three arguments against imposition of the tax.

1. The board found that the "service" charge was a separately stated charge for the rental of containers put into the customers' possession, and thus was subject to the tax. According to the taxpayer, there was no rental within the statute; it argues that the customer was interested only in enjoying a rubbish removal service, and the tangible property was supplied to him solely for the convenience of the service provider.[2] But even if that description of the customer's attitude is accurate, there was nothing to obviate the incidence of the tax where a discrete charge was made

---

[2] There is nothing in the record indicating why customers would opt for one removal method rather than another. Conceivably some customers found the roll-off containers cheaper and more convenient for themselves than other receptacles, and therefore chose roll-off service — in which case it would be inaccurate to state that the particular containers were used only for the convenience of the rubbish company.

for the tangible personal property. We then have a sale conforming to the terms of § 1 (12) (a) quoted above.

The three cases on which the taxpayer relies, cited in the margin,[3] only point up that problems of characterization under a sales tax on tangible goods can arise only where a single charge is made integrating taxable (tangible goods) and nontaxable (service) elements. Where the seller has decided to charge separately for taxable goods, no considerations of fairness or administrative simplicity exist to relieve him of the consequences of his choice. Compare *Houghton Mifflin Co.* v. *State Tax Comm'n*, 373 Mass. 772, 774 (1977), where a single charge was made and "the services and the property [were] inseparable" because the services created the property.

Similar to our case was *Chayet* v. *Commissioner of Corps. & Taxation*, 367 Mass. 908 (1975), where the sales tax was held properly levied on charges for telephone equipment left with the taxpayer for which there was a billing separate from that for the telephone service which was tax free. Illustrative also is *In re S. Santini Storage Corp.* v. *Gerosa*, 13 App. Div. 2d 762 (N.Y. 1961), where customers of a storage company, in addition to charges for the storage service, paid a separate charge for each wardrobe they used.

---

[3] See the following cited cases: *Undercofler* v. *Macon Linen Serv., Inc.*, 114 Ga. App. 231, 236 (1966) ("[n]o separate charge was made for the use of the cabinets and dispensers" holding the linens which the taxpayer cleaned); *Long Mfg. Co.* v. *Johnson*, 264 N.C. 12, 17 (1965) (tanks holding gas customers purchased were not rented by them because "customers on whose premises [retailer] installed tanks make no . . . periodic payments" for them); *San-A-Pure Dairy Co.* v. *Bowers*, 173 Ohio St. 469, 471 (1962) ("[i]t is to be emphasized that [ice-cream sellers] were not billed and charged for the use of appellant's [freezer] equipment, and that they paid only the prevailing wholesale price for the ice cream they received").

See also *Atlanta Americana Motor Hotel Corp.* v. *Undercofler*, 222 Ga. 295, 300-301 (1966); *Machinery Moving, Inc.* v. *Porterfield*, 26 Ohio St. 2d 99 (1971) (exempting roll-off rubbish containers because no separate charge was made for them); *Commonwealth* v. *Benjamin Franklin Hotel Co.*, 28 Pa. D. & C.2d 329, 77 Dau. 4 (1961). But cf. *Dow Chem. Co.* v. *Department of Revenue*, 26 Ill. 2d 283 (1962).

Because the wardrobes were subject to an invariable $1.50 apiece charge, whether or not delivered to the customer, sales tax was imposed in the absence of a "showing of any extra service in connection with" these items. *Id.* at 763.

The taxpayer also argues that its customers did not have "possession" of the containers within the meaning of § 1 (12) (*a*) and the commission's regulation,[4] and points to the fungibility of the containers and their fitness for use only in connection with the roll-off service. But the board's finding was otherwise as to possession, and it cannot be said that that was unwarranted as matter of law. See *Houghton Mifflin Co.* v. *State Tax Comm'n, supra* at 774-775. There was control in the customer while the container was on his premises sufficient to make out a "possession."

2. Even if one does regard the "service" charge as separate from the "slips," still, argues the taxpayer, considering the former charge in and of itself, it was not made primarily for the rental of tangible property, and should fall within the exclusion of § 1 (13) (*c*) for personal service in which the sale element is inconsequential. The board adopted the taxpayer's requested finding that the "service" charge was incurred for "the use of a container in good repair and maintenance and with a stand-by capability for the emptying of rubbish collected therein." We take it that the taxpayer would have us find as matter of law that the "stand-by capability" for rubbish disposal provided by the taxpayer was a personal service, compared with which the provision of the actual containers was inconsequential. On the contrary, the board had before it ample evidence on which to conclude that the container rental element of the separate charge was consequential, if not overwhelming. The 1967 ruling described the industry practice as a

---

[4] 2 State Tax Rep., Mass. (CCH) par. 60-107, Sales and Use Emergency Reg. No. 3, reads in part: "In order to constitute a taxable transaction, possession of the property must be transferred to the lessee. Possession shall be deemed to have passed to the lessee whenever the property is under his control or direction whether or not an operator is furnished by the lessor."

"separate charge for the use of the container." Three letters from the taxpayer's customers characterized the charge as "for rental of container." There was no evidence that customers who did not use the roll-off method paid any charge for a "stand-by capability."

3. The taxpayer, which is a carrier under the jurisdiction of the Department of Public Utilities, says that the separate charge is to be brought within an exclusion from sales tax not yet quoted, that in § 1 (13) (*b*) for "sales of transportation or communication services." It argues in its brief that "all that a carrier does or provides" is a transportation service, including "the provision of equipment."

It is enough to observe that no transportation was involved in the charge on which tax was imposed; all pick-up and removal elements fell under "slips." See *Chayet* v. *Commissioner of Corps. & Taxation, supra* at 909 ("[t]he relevant statutes exempt telephone service . . . but not the sale of telephone equipment"). See also the rejection of sweeping interpretations of sales tax exemptions for transportation services in *Schemmer* v. *Iowa State Tax Comm'n*, 254 Iowa 315 (1962), and *Hooks* v. *Comptroller of the Treasury*, 265 Md. 380 (1972). There is scant reason for thinking the Legislature meant to allow common carriers the unusual privilege of selling tangible personal property free of sales tax.[5] A definition of "services" and "transportation" contained in G. L. c. 159B (carriers of property by motor vehicle) is pressed on us. We doubt very much it encompasses the rental of rubbish containers to customers, but, even if it did, we would not easily transpose a definition mapping out a regulatory agency's jurisdiction to a controversy about a sales tax.

*Decision of the Appellate
Tax Board affirmed.*

---

[5] See Historical Comment .50 to Sales and Use Tax Emergency Reg. No. 3, par. 60-107, *supra*: "[w]hether or not a motor common carrier is performing a transportation service or renting its equipment and driver is a question of fact . . . . The burden of proof is on the taxpayer to show that no rental of equipment in fact occurred."