**In re ADCOM, INC. Debtor.**

**Bankruptcy No. 85–01136–JNG.**

United States Bankruptcy Court, D. Massachusetts.

Nov. 25, 1986.

Arnold S. Goldstein, Meyers, Goldstein, Ghyten & Kosberg, Chestnut Hill, Mass., for petitioner.

---

Donald Lassman, Com. of Mass., Dept. of Revenue, Cambridge, Mass., for respondent.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The matter before the Court is Adcom, Inc.'s ("Adcom" or the "Debtor") objection to the proof of claim submitted by its only creditor, the Commonwealth of Massachusetts, Department of Revenue ("DOR"). The DOR filed its proof of claim in this proceeding on November 13, 1985. The DOR seeks $110,883.88 for unpaid sales tax assessed in March of 1985. The Debtor maintains that it is not subject to the sales tax. A trial was held on the liability issue on May 27, 1986.

## FACTS

The facts essentially are undisputed. The Debtor is a Massachusetts corporation engaged in the business of designing and producing exhibits and displays for trade shows. It also renovates, refurbishes and repairs existing displays and exhibits. Its primary customers are manufacturers of technical products and services.

As described at the trial, when a customer contacts Adcom, Adcom's first step is to come up with a suitable design for the display or exhibit desired by the customer. Adcom utilizes the services of two outside design firms and one outside designer. The Debtor's principal, Ronald G. McCarthy, arranges meetings between the customer and the designer selected and facilitates the dialogue between them to come up with a design acceptable to the customer. The design phase generally entails the production of a series of drawings and eventually leads, in most instances, to the construction of a model. The customer then is given the opportunity to examine the model or drawings and to suggest additional changes.

The next phase is the actual construction of the exhibit or display at Adcom's headquarters. Adcom employs several carpenters and a computer graphic artist to do the actual construction and finish work for the exhibits or displays in accordance with the drawings or models produced by the outside designers.

Upon completion of the exhibit or display, Adcom prepares and mails to the customer an invoice based upon the labor and materials used in producing the finished product. Materials, labor and design work are not separately stated on the invoices.

## CONCLUSIONS OF LAW

The Commonwealth of Massachusetts imposes a tax upon all "sales at retail" of tangible personal property. M.G.L. c. 64H, § 2.[1] "Sale" is defined to include "[a]ny transfer of title or possession, or both, exchange, barter, lease, rental, conditional or otherwise, of tangible personal property for a consideration, in any manner or by any means whatever." M.G.L. c. 64H, § 1(12)(a). "Sale at retail" or "retail sale" is defined as "a sale of tangible personal property for any purpose other than resale in the regular course of business...." M.G.L. c. 64H, § 1(13). Tangible personal property is defined as "personal property of any nature consisting of any produce, goods, wares, merchandise and commodities whatsoever, brought into, produced, manufactured or being within the commonwealth, but shall not include rights and credits, insurance policies, bills of exchange, stocks and bonds and similar evidences of indebtedness or ownership." M.G.L. c. 64H, § 1(15).

The definition of "sale at retail" contains an exclusion for "professional, insurance or personal service transactions which involve no sale or which involve sales as inconsequential elements for which no separate

---

1. Section 2 provides in relevant part:
   An excise is hereby imposed upon sales at retail of tangible personal property in the commonwealth by any vendor at the rate of five percent of the gross receipts of the vendor from all such sales of such property, except as otherwise provided in this chapter....
   M.G.L. c. 64H, § 2.

charges are made." M.G.L. c. 64H, § 1(13)(c). According to the DOR, the primary purpose of the personal service transaction exclusion is to exclude from taxation pure service transactions such as those involving accountants, attorneys, engineers, architects, beauticians and repairmen.

"Whether a particular transaction involving the transfer of property is a personal service transaction depends upon the facts." *Houghton Mifflin Company v. State Tax Commission,* 373 Mass. 772, 774, 370 N.E.2d 441 (1977). According to the Supreme Judicial Court, "[t]he test is the object of the transaction. If the buyer's fundamental object is to obtain the item of personal property transferred to it, the sale of that property cannot reasonably be considered 'inconsequential' and the transaction cannot reasonably be one for personal service." *Id.* at 775, 370 N.E.2d 441.

The Supreme Judicial Court applied the test it formulated in *Houghton Mifflin Company v. State Tax Commission* (hereinafter HM–I) in *Commissioner of Revenue v. Houghton Mifflin Company,* 396 Mass. 666, 487 N.E.2d 1388 (Mass.1986) (hereinafter HM–II). In HM–II, Houghton Mifflin appealed the refusal of the DOR to abate sales and use taxes assessed against it. The Appellate Tax Board ordered the abatement, and the Supreme Judicial Court affirmed the decision of the Board.

The issue presented in HM–II was whether art work purchased by Houghton Mifflin for use in the trade and educational books it publishes is tangible personal property subject to the sales tax or whether the art work is within the exclusion provided for in section 1(13)(c). The court detailed the process by which Houghton Mifflin obtained art work from free lance artists and determined that the taxpayer was essentially buying the artists' imagination, talent and skill. Consequently, the court found that the purchase of art work was not taxable.

The Debtor, as did Houghton Mifflin, argues that it is exempt from the obligation to pay sales taxes because it is primarily engaged in the sale of non-taxable creative services. In short, the Debtor maintains that, although the creative services are embodied in a finished product, the customer is essentially buying Adcom's services whether that customer is seeking a new or a rennovated display or booth. The DOR naturally rejects the Debtor's argument. It maintains that the creative efforts of the outside design firms employed by the Debtor do not rise to the level contemplated by the personal service exemption and constitute an insignificant portion of the total sales price of the booth or display. Furthermore, the DOR maintains that the Debtor's customers' objective is to obtain displays or booths, not design services, models or sketches. Finally, the DOR cautions that the Debtor's pre-litigation behavior and method of pricing preclude the Debtor from separating the portion of each invoice attributable to work performed by outside design firms from the rest of the invoice price.

This Court has had numerous opportunities to address objections to proofs of claims. In *In re Nantucket Aircraft Maintenance Co., Inc.,* 56 B.R. 87 (Bankr. D.Mass.1985), this Court summarized the state of the law as follows:

A proof of claim constitutes prima facie evidence of the validity and amount of the claim. When an objection to the claim is made the objecting party carries the burden of going forward with evidence showing facts tending to defeat the claim but not the burden of ultimate persuasion. The burden of persuasion always remains on the claimant and, therefore, once there is evidence as to the invalidity of the claim, the burden rests on the claimant to introduce rebutting evidence.

*Id.* at 88. *See also* 11 U.S.C. § 502(a); Bankruptcy Rule 3001(f); L. King 3 *Collier on Bankruptcy* ¶ 502.01 (15th ed. 1986).

In the instant case, the Court observes that there is merit to the positions advanced by both parties. The Court notes,

however, that neither the Debtor nor the DOR introduced evidence relative to the buyers' fundamental objectives in obtaining booths or exhibits for trade shows. Nevertheless, the Court agrees with the DOR to the extent that it defies common sense to suppose that the primary objective of the Debtor's customers is not the acquisition of items of personal property. Although the design phase leading up to the production of booths and displays is important, the construction phase is equally important, particularly in view of the sizes of and uses for the exhibits constructed by Adcom. Furthermore, unlike the situation in HM–II, the drawings and models produced by the outside design firms are not finished products. Rather the sketches and models are produced specifically for Adcom customers and only are utilized in the fabrication of the booths or exhibits constructed for those customers.

The Court notes that there was no suggestion that the Debtor's failure to collect sales tax was motivated by anything other than a sincere belief that no tax was owed. Additionally, the Court notes that, to the extent that the Debtor's invoices to its customers incorporate actual expenses for outside design work and to the extent that the Debtor can establish those expenses for each booth or exhibit constructed and sold to a customer, the Debtor, pursuant to HM–II, should be entitled to a porportional reduction of its sales tax liability for those services. The Court anticipates that the actual value of the outside design services would be established by invoices submitted to the Debtor by the outside designers for each booth or exhibit for which a model or sketches was prepared. If the parties are unable to agree on the actual value of the outside design services, the Court, at the request of the parties, will schedule a further hearing to consider the matter.

In view of the foregoing, the memoranda and arguments of counsel, the Court hereby finds that the Debtor is liable to the DOR for the payment of sales tax.