HOUGHTON MIFFLIN COMPANY *vs.* STATE TAX
COMMISSION.

Suffolk.     September 14, 1977. — December 2, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Sales tax: exemption. *Words,* "Personal service transaction."

The Appellate Tax Board's finding that the sale of reproduction proofs to a book publisher was not a "personal service transaction" exempt from sales tax under G. L. c. 64H, § 1 (13), was not erroneous as matter of law. [774-776]

Prior to August 1, 1971, the sale of reproduction proofs to a book publisher was exempt from sales and use taxes under G. L. c. 64H, § 6 (*r*), inserted by St. 1967, c. 757, § 1. [776-777]

APPEAL from a decision of the Appellate Tax Board.

*Harold Hestnes* (*Joel H. Sirkin* with him) for Houghton Mifflin Company.

*Terry Jean Seligmann,* Assistant Attorney General, for the State Tax Commission.

WILKINS, J.   The broad issue in this appeal concerns the claim of Houghton Mifflin Company (Houghton) that its purchases of type composition from various indepen-

dent typesetters and type composers (compositors) are not subject to the Massachusetts sales and use taxes. G. L. cc. 64H, 64I. Houghton argues that such purchases are "personal service transactions" exempted from the term "retail sale" by G. L. c. 64H, § 1 (13). We disagree with Houghton's contention and affirm the rulings of the Appellate Tax Board (board) on this issue.

A second issue of lesser scope is whether such purchases prior to August 1, 1971, were exempted from the sales and use taxes by G. L. c. 64H, § 6 (*r*) (see G. L. c. 64I, § 7), which, prior to its 1971 amendment (St. 1971, c. 555, § 45), exempted sales of certain materials consumed and used directly in an industrial plant in the process of manufacturing tangible personal property to be sold. We agree with Houghton that its purchases of type composition prior to August 1, 1971, were exempt from the sales and use taxes, and reverse the board's decision.[1]

The facts are not in significant dispute. Houghton is a well known book publisher. Once it has chosen a manuscript for publication, it chooses a compositor on competitive bids from selected compositors. The compositor uses its training and experience to arrange the manuscript into type according to Houghton's specifications. The compositor submits galley proofs and then page proofs to Houghton for its approval. When the page proofs are approved, the compositor prepares reproduction proofs which it delivers to Houghton.[2] The cost of reproduction proofs and other items of tangible personal property delivered to Houghton averages from 5% to 10% of the total price

---

[1] Houghton appealed to the board from the denial by the State Tax Commission (commission) of its application for abatement of sales and use taxes for the period from April 1, 1970, through December 31, 1972. The board decided in favor of the commission, and Houghton appealed to this court.

[2] A compositor may use one of three methods to arrange the manuscript into type: (1) hot metal composition, (2) strike-on or cold composition, or (3) photo-composition. In the photo-composition method, the compositor submits to Houghton for approval a print of the final type arrangement and, when approved, the film is released by Houghton to a printer for platemaking.

Houghton pays for composition. Houghton sends the reproduction proofs to a printer for platemaking, a process by which the type arrangement as imprinted on the reproduction proofs is transferred to press plates which are used to print the book. The board noted that Houghton's only witness testified that the reproduction proofs were the "sine qua non" of the contract, and not the steps or methods used in their production. In so far as it was a question of fact, the board found that "the sale of reproduction proofs ... [was] not a 'personal service' transaction as those words are used in G. L. c. 64H, § 1 (13)."

1. The sale of composition to Houghton is a "retail sale," as defined in G. L. c. 64H, § 1 (13), and is not excluded from that term by the provision that a " 'retail sale' shall not include ... (c) ... personal service transactions which involve no sale or which involve sales as inconsequential elements for which no separate charges are made." Houghton argues that the object of its arrangements with compositors is to obtain their services and that the reproduction proofs are inconsequential compared to the service nature of the transaction.

Whether a particular transaction involving the transfer of property is a personal service transaction depends on the facts. Both parties argue, and we agree, that where the services and the property are inseparable, because of the integrated nature of the transaction, the character of the transaction must be analyzed to ascertain whether the buyer's basic purpose was to acquire the property which was sold to it, or to obtain the services. The board's finding of fact that the sale of reproduction proofs to Houghton was not a personal service transaction must be respected on this appeal unless, as matter of law, that conclusion is not warranted. *United Church of Religious Science* v. *Assessors of Attleboro,* 372 Mass. 280 (1977). *Assessors of Hamilton* v. *Iron Rail Fund of Girls Clubs of America, Inc.,* 367 Mass. 301, 302-303 (1975).

We think Houghton's basic purpose in contracting with compositors was to obtain reproduction proofs. We shall not attempt to define the circumstances in which profes-

sional or artistic skills might become such a major aspect of a transaction that the personal service nature of the arrangement becomes dominant. Here, Houghton was seeking an end product conforming to its own specifications. To be sure, personal services are an important part of the process of preparing reproduction proofs. The cost of labor is often a major cost of producing an object for sale. That circumstance is not the significant factor, however, in determining whether sale is an inconsequential element of a personal service transaction. See Hellerstein, The Scope of the Taxable Sale Under Sales and Use Tax Acts: Sales as Distinguished from Services, 11 Tax L. Rev. 261, 274 (1956). The test is the object of the transaction. If the buyer's fundamental object is to obtain the item of personal property transferred to it, the sale of that property cannot reasonably be considered "inconsequential" and the transaction cannot reasonably be considered one for personal service. We see no basis for ruling that the board was wrong, as matter of law, in concluding that the sale of reproduction proofs was not a personal service transaction.

The result we reach on this issue is consistent with the conclusions reached in comparable situations in other jurisdictions. See *Bigsby* v. *Johnson,* 99 P.2d 268, 270 (Cal. 1940) (sale of composition proof); *Albers* v. *State Bd. of Equalization,* 237 Cal. App. 2d 494, 495-497 (1965) (drawings of commercial draftsman);[3] *Community Telecasting Serv.* v. *Johnson,* 220 A.2d 500 (Me. 1966) (art work and slides for television advertising); *People ex rel. Walker Engraving Corp.* v. *Graves,* 268 N.Y. 648, aff'g 243 App. Div. 652 (1935) (photoengraving);[4] *Voss* v. *Gray,*

---

[3] The California statute in effect at the time of these decisions did not have a personal service transaction exception as such, but the courts approached the problem substantially as if it did. Today, the sale of reproduction proofs in California is exempted by a specific statutory provision. See Cal. Rev. & Tax Code § 6010.3 (Deering) (1975).

[4] The metal on which the photo was engraved was not worth more than 2% of the charge to the customer. The New York statute did not have a specific exemption for personal service transactions but, here again, the court implicitly accepted the claim that a payment for services would not be taxable.

70 N.D. 727 (1941) (finished photographs of professional photographer); *Federated Dep't Stores, Inc.* v. *Kosydar,* 45 Ohio St. 2d 1 (1976) (radio and television tapes and films for use in advertising); *Accountant's Computer Servs., Inc.* v. *Kosydar,* 35 Ohio St. 2d 120 (1973) (data processing print-outs without analysis by the seller, taxable; sale of print-outs which were the product of analysis or interpretation by the seller, not taxable); *WTAR Radio-TV Corp.* v. *Commonwealth,* 217 Va. 877 (1977) (commercial advertisements for television); *District of Columbia* v. *Norwood Studios, Inc.,* 336 F.2d 746, 747 (D.C. Cir. 1964) (motion pictures for television).

2. Although we have rejected the claim that the sale of reproduction proofs is a "personal service transaction," we agree with Houghton that its purchases prior to August 1, 1971, are exempt from taxation under G. L. c. 64H, § 6 (*r*), inserted by St. 1967, c. 757, § 1.[5] Prior to August 1, 1971, § 6 (*r*) exempted sales of materials which are "consumed and used directly . . . in an industrial plant in the process of the manufacture of tangible personal property to be sold, including the publishing of a newspaper."

The board concluded that because publishing newspapers was included expressly in the exemption of § 6 (*r*), while publishing books was not, Houghton's claim should fail. However, the implication of including newspapers

---

[5] Statute 1971, c. 555, § 45, amended § 6 (*r*), effective as to sales on and after August 1, 1971 (St. 1971, c. 555, § 67), to require that the material be consumed and used "in the actual manufacture" of the property to be sold. Houghton makes no claim that § 6 (*r*) exempts reproduction proofs, sold after August 1, 1971. This concession seems sound. One could infer that the 1971 amendment of § 6 (*r*), to exempt only materials used in the *actual* manufacture of the product to be sold, was a response to our decision in *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation,* 358 Mass. 563 (1971). If this inference is correct, the amendment would represent an attempt to tax materials which are consumed and used in the process of printing (such as reproduction proofs) unless those materials are consumed and used in the actual printing (ink and paper, for example). The result of such a change is to impose a sales tax on numerous products used in the manufacturing process. That tax will be reflected in the cost of the item manufactured and in turn in the item's retail sales price on which another sales tax will be computed.

within the exemption is that the general words were intended to cover publishing of all kinds of printed matter for sale. See *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation,* 358 Mass. 563, 573 n.13 (1971). The commission does not press the board's reasoning here.

We think that reproduction proofs fit within the literal meaning of § 6 (*r*) and within the reasoning of our decision in the *Courier Citizen* case, which the board did not cite. The test of § 6 (*r*) is the item of property itself and not the character of the buyer. The reproduction proof is consumed and used directly in a printer's plant in the process of manufacturing books to be sold. Section 6 (*r*) does not require that the buyer, Houghton here, own and operate an industrial plant, but provides simply that the item purchased be consumed and used in carrying out the purpose for which it was bought. The *Courier Citizen* case indicates that, under the law then in effect, a printer who acquired items such as reproduction proofs would not be liable for a sales tax on such items. *Id.* at 573. The fact that Houghton is not itself a printer, but delivers such items to printers, does not alter the result under § 6 (*r*) prior to its 1971 amendment.

3. The decision of the board is reversed. Houghton's application for abatement of sales and use taxes should be allowed as to purchases of reproduction proofs made by it before August 1, 1971.

*So ordered.*