COMMISSIONER OF REVENUE vs. McGRAW-HILL, INC.

Suffolk. January 5, 1981. — April 14, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Taxation,* Sales tax. *Words,* "Sale."

The Appellate Tax Board properly determined that the sale of certain construction industry information bulletins was excluded from the statutory definition of "sale" by virtue of G. L. c. 64H, § 1 (12) (*f*), and therefore not subject to the sales tax. [400-403]

The Appellate Tax Board was not required to make findings as to whether the sale of certain construction industry information bulletins fell within the definition of "sale" in G. L. c. 64H, § 1 (12) (*e*), for sales tax purposes where the proceedings before the board had been narrowed, with the assent of the Commissioner of Revenue, to the issue of the taxability of the sales under § 1 (12) (*f*) and § 1 (13). [404-405]

APPEAL from a decision of the Appellate Tax Board.

*Stephen S. Ostrach,* Assistant Attorney General, for the plaintiff.

*Charles A. Schwartz & John L. Cady,* both of New York, for the defendant.

ABRAMS, J. The Commissioner of Revenue appeals[1] from a decision of the Appellate Tax Board (board) holding that the sale of construction industry information bulletins (Dodge Reports), compiled and marketed by McGraw-Hill, Inc. (McGraw-Hill), is excluded from the statutory definition of "sale" by virtue of G. L. c. 64H, § 1 (12) (*f*), and therefore is not subject to the sales tax. The Commissioner argues that the board's decision is erroneous as a matter of law, and further contends that the board erred in not making findings as to whether the sales of these reports are taxable under G. L. c. 64H, § 1 (12) (*e*). We affirm the board's decision.

---

[1] See G. L. c. 58A, § 13.

On December 23, 1974, the Commissioner of Revenue notified McGraw-Hill of her intention to assess a deficiency of sales taxes based on the sale of Dodge Reports to customers in Massachusetts. McGraw-Hill paid the deficiency, and filed applications for abatement of the sales tax. McGraw-Hill consented to the failure of the Commissioner to act on the applications within six months of the date of filing. The consents were withdrawn on December 6, 1976, and the applications for abatement were deemed denied as of that date, pursuant to G. L. c. 58A, § 6. On January 10, 1977, McGraw-Hill filed an appeal from those denials with the board. See G. L. c. 58A, § 7. After hearing, the board issued its decision in favor of McGraw-Hill. Following a request by the Commissioner, the board issued its findings of fact and report, Rule 32 of the Rules of Practice and Procedure of the Appellate Tax Board (1972), and the Commissioner appealed.

We summarize the facts as found by the board. McGraw-Hill, Inc., is a New York corporation doing business in Massachusetts as a duly registered vendor under the sales tax, with offices located in Boston and West Springfield. From these offices McGraw-Hill operates its F.W. Dodge division, which compiles information about the construction industry and distributes that information to customers in Massachusetts through the Dodge Reports.

McGraw-Hill has a staff of about 500 reporters throughout the United States, including twenty-five in the Boston area, who gather construction industry information from sources including architects, contractors, and public notices. The reporters are supported by a large staff which gathers similar information from newspapers, by telephone, and by canvassing. All information is forwarded to a central location, such as the Boston office, where it is assembled, compiled, and broken down into numerous categories based on factors such as the nature and cost of the construction project, as well as job descriptions, specifications as to the materials and trades needed for each project, and directions on how and where to submit bids. Each slip

contains information about one project and constitutes an individual Dodge Report, which is distributed to subscribers on small slips of paper.

The reports are used by suppliers of materials and services to the construction industry. Subscribers include general contractors, subcontractors, banks and other lending institutions, insurance companies, architects, and suppliers of labor, goods, materials, and services needed for the construction of building projects and developments.

McGraw-Hill employs a staff of trained salesmen who assist and counsel potential subscribers in determining exactly what types of information the subscriber needs. The salesmen use a "market profile" form which lists sixty-seven types of construction projects, nine levels of construction costs, seven stages of project progress, eight classifications of buyers and specifiers, thirteen major and minor trade groups, seventeen types of materials, and various locations of construction projects. Each subscriber receives only those reports indicated as relevant by its market profile. The subscription rate does not depend on the number of Dodge Reports a subscriber receives.

The board found that one subscriber "may call for one specific plan out of a great many possible combinations,"[2] and that, although it is possible that more than one subscriber may receive the same Dodge Report on a particular day in the early stages of a construction project, different subscribers "are not likely to receive the same package of Reports over a period of time. Even in the case of the comparatively few identical 'Market Profile' subscribers, there are usually significant differences in the type and size of the jobs needed by them."

Subscribers to Dodge Reports may elect to receive certain additional services as part of their subscription package. McGraw-Hill conducts a "Special Inquiry Service" for the "emergency" use of subscribers who have misplaced reports

_____

[2] One of McGraw-Hill's exhibits indicated that there are more than 2,000,000,000 possible "market profile" combinations.

or who wish to check specific facts about a current job. The inquiry service handles written and telephone inquiries. In addition, at each of its district offices, McGraw-Hill maintains a "plan room," which contains the plans and specifications that have been obtained by McGraw-Hill for jobs that are out for bids. Subscribers may inspect, copy, or borrow overnight these plans, and attendants offer assistance in locating and in using the documents. The board found there to be significant differences in the kind of information different subscribers "may request from the Special Inquiry part of the services furnished, or in how they use the plan rooms."

Also included in the services furnished by McGraw-Hill is a review of the subscriber's "market profile" and the Dodge Reports that have been received by the subscriber. As a result of these reviews, a subscriber's "market profile" may be adjusted by eliminating nonrelevant reports or by adding new ones. McGraw-Hill's representatives also advise and counsel subscribers on which jobs to seek and which leads to follow.

The board found that the slips of paper on which Dodge Reports are printed have no intrinsic value and represent only about 2% of total sales. The memoranda are worthless shortly after they are received. "Their value lies," the board found, "in the fact that they provide up-to-the-minute information on which the clients can act before the information has obtained general publicity."

The board concluded that McGraw-Hill's activities fell within the exclusion of G. L. c. 64H, § 1 (12) (f), as the "furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons."

1. *The taxability of Dodge Reports under G. L. c. 64H, § 1 (12) (f).* The Commissioner challenges the board's determination that the Dodge Reports fall within the G. L. c. 64H, § (12) (f), exception.[3] We note initially that the

---

[3] General Laws c. 64H, § 1 (12) (f), as amended by St. 1970, c. 563, § 1, provides, in pertinent part: "'Sale' and 'selling' include . . . [t]he fur-

board is an "'agency charged with administration of the [tax] law,' whose interpretation of tax statutes may be given weight by this court." *Xtra, Inc.* v. *Commissioner of Revenue,* 380 Mass. 277, 283 (1980), quoting from *Henry Perkins Co.* v. *Assessors of Bridgewater,* 377 Mass. 117, 121 (1979). However, the board is "still bound by 'general principles affecting administrative decisions and judicial review of them.'" *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth,* 368 Mass. 745, 749 (1975), quoting from *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.,* 355 Mass. 610, 612 n.1 (1969). See *W.R. Grace & Co.* v. *Commissioner of Revenue,* 378 Mass. 577, 581 (1979) (mixed questions of law and fact are subject to

---

nishing of information by printed, mimeographed or multigraphed matter or by duplicating written or printed matter in any other manner, including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons, but excluding the furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons."

The Commissioner argues that the meaning of the word "personal" must be gleaned by considering the way we have construed it in a different statutory context. The personal privacy exemption from the definition of "public records," G. L. c. 4, § 7, Twenty-sixth (*c*), as amended by St. 1977, c. 691, includes: "[P]ersonnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." We have interpreted that exemption to mean "invasion of personal privacy," which is limited to facts involving "intimate details" of a "highly personal" nature. *Attorney Gen.* v. *Collector of Lynn,* 377 Mass. 151, 157 (1979). *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn,* 374 Mass. 812, 818 (1978). The Commissioner argues that, for the purposes of § 1 (12) (*f*), personal must mean "intimate details of a highly personal nature."

Assuming, arguendo, that such information is for sale at retail, we do not decide if the Commissioner's contention as to the meaning of the word "personal" is correct under § 1 (12) (*f*), for the board focused its attention on the word "individual." "The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise. . . . The present statutory context does not demand or even suggest other than a disjunctive meaning." *Commonwealth* v. *Olivo,* 369 Mass. 62, 67 n.4 (1975), quoting from *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Auth.,* 350 Mass. 340, 343 (1966).

judicial review). We examine the board's ruling in light of these principles.

Retail sales of tangible personal property in the Commonwealth are subject to the sales tax. G. L. c. 64H, § 2.[4] The Commissioner argues that McGraw-Hill is selling all of its subscribers an identical service; namely access to the entire body of current information collected by McGraw-Hill, rather than providing "individual" information to each subscriber.[5] This view misses the critical fact that it is only after McGraw-Hill has selected information that is of specific use to the individual subscriber that the furnishing of Dodge Reports becomes valuable to that subscriber. "[T]he character of the [sales] transaction must be analyzed to ascertain . . . the buyer's basic purpose" in determining whether a sale is subject to a tax. *Houghton Mifflin Co. v. State Tax Commission,* 373 Mass. 772, 774 (1977).

The board found that each subscriber's service represents "one specific plan out of a great many possible combinations," see note 3, *supra*; and that even as to those subscribers with identical "market profiles," there are usually significant differences in the size and type of projects about which they require information, in the type of information they request through the Special Inquiry Service, and in the use they make of the plan room. We believe that the board's findings support its determination that the fundamental object of the subscriber to Dodge Reports is to obtain an ongoing source of construction industry information sifted and

_____

[4] The sales tax rate is currently 5%; for the years for which McGraw-Hill seeks an abatement, the rate was 3%. G. L. c. 64H, § 2.

[5] The Commissioner argues that the decision to have McGraw-Hill select in advance the information the subscriber does not want, does not change the nature of what McGraw-Hill actually sells, which is access to its entire collection of information. The Commissioner draws an analogy to a newspaper subscriber telling a newsboy not to deliver one or more sections of the Sunday paper; such an act, it argues, would not turn the subscription into the furnishing of individual information. Carried to its logical conclusion, the Commissioner's argument asks us to determine whether it would be erroneous for the board to grant an exemption under § 1 (12) (*f*) to a clipping service. That issue is not before us, and we do not decide it. G. L. c. 58A, § 13.

individualized by McGraw-Hill to meet the needs of the individual subscriber.

The second requirement of the § 1 (12) (f) exclusion, that "[t]he furnishing of information . . . is not or may not be substantially incorporated in reports furnished to other persons," is also satisfied by McGraw-Hill's activities. Some of the information provided to a Dodge Report subscriber is incorporated in reports furnished to other subscribers. However, the issue is whether the information is substantially incorporated in reports furnished to other persons. The board found that due to the variety of information collected by McGraw-Hill, no subscriber received the same reports over a long period. The evidence supported the board's conclusion that the information furnished is not substantially incorporated in reports furnished to other individuals.

The Commissioner also contends that the board has failed to take account of an administrative interpretation of G. L. c. 64H, § 1 (12) (f). See Sales and Use Tax Bureau Memo #3, Re 1970 Legislation. The memo states that while stock market advisory services, and daily racing forms are taxable transfers of information, the furnishing of abstracts of title to real property is not. In the case of stock market advisory services and daily racing forms, all subscribers receive identical information, which is not the case with Dodge Report subscribers. In the case of a title abstract, information is culled from a public record, similar to the compiling of Dodge Report information. In addition, it is possible that a title abstractor might have occasion to supply the information contained in an abstract to several different clients in the course of a real estate transaction, particularly a commercial or industrial transaction. While the analogy between Dodge Reports and title abstracts is not perfect, we believe the board's determination is consistent with the interpretation of the Commissioner of Corporations and Taxation in 1970, of § 1 (12) (f).[6]

---

[6] See R.F. Barrett & A.C. Bailey, Taxation § 1307 (2d ed. 1970), noting that "[s]tock market advisory reports, stock market analysis and the daily

2. *The taxability of Dodge Reports under G. L. c. 64H,*
§ *1 (12) (e).* The Commissioner argues that, even if we
uphold the board's decision that Dodge Reports fall within
the § 1 (12) (*f*) exclusion from the statutory definition of
sales, we should nonetheless remand this proceeding to the
board for a determination whether such sales fall within the
definition of "sale" under § 1 (12) (*e*). That section, as ap-
pearing in St. 1967, c. 757, § 1, provides that "sale" includes
"[a] transfer for a consideration of the title or possession of
tangible personal property which has been produced,
fabricated or printed to the special order of the customer, or
of any publication." The Commissioner contends that it
was error for the board to consider only § 1 (12) (*f*), and to
fail to make any findings as to the application of § 1 (12) (*e*),
and, therefore, the case should be remanded to the board.

We disagree. These proceedings were narrowed at the
outset, with the Commissioner's assent,[7] to the issue of the
taxabililty of Dodge Reports under § 1 (12) (*f*), and
§ 1 (13).[8] Neither at that time, nor in her brief to the board
did the Commissioner raise the issue of the taxability of
Dodge Reports under § 1 (12) (*e*). "The theory of law on
which by assent a case is tried cannot be disregarded when
the case comes before an appellate court for review of the
acts of the [board]." *Kagan* v. *Levenson,* 334 Mass. 100,
106 (1956), quoting from *Santa Maria* v. *Trotto,* 297 Mass.

---

racing forms will be subject to tax. However, a market analysis of an in-
dividual's securities would not be taxed because it is personal in nature.
Similarly, title abstracts furnished to an attorney would not be subject to
tax."

[7] Asked at the hearing by the presiding officer whether the legal issues
involved were "the nature of the information provided by the Appellant,
whether or not it was exempt under [G. L. c. 64H, § 1 (12) (*f*)] and also
the nature of whether it was a retail sale," counsel for the Commissioner
replied, "I think, basically, that is correct."

[8] That section, as appearing in St. 1967, c. 757, § 1, provides in part:
"The term 'sale at retail' or 'retail sale' shall not include . . . professional,
insurance, or personal service transactions which involve no sale or which
involve sales as inconsequential elements for which no separate charges
are made."

442, 447 (1937). See *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, ante* 376, 381 (1981); *Baker* v. *Commercial Union Ins. Co.*, 382 Mass. 347, 349 n.5 (1981). See also G. L. c. 58A, § 13. We do not think that the mere recitation of G. L. c. 64H, § 1 (12) (*e*), in a request to the board,[9] is sufficient to put the board on notice that the Commissioner intended to withdraw her prior assent to the narrowing of issues in the case. The Commissioner put forth no compelling reasons for us to relieve her of her prior agreement. Thus, there was no error in the board's failure to make findings as to the application of § 1 (12) (*e*) to the sale of Dodge Reports. The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[9] The Commissioner made a request for a ruling that, as a matter of law, "sale" and "selling" include "a transfer for a consideration of the title or possession of tangible personal property which has been produced, fabricated or printed to the special order of the customer, or of any publication."