**A.D. STORE COMPANY, INC.,**
a Colorado corporation, d/b/a
**Auer's, Plaintiff–Appellant,**

v.

**EXECUTIVE DIRECTOR OF the DEPARTMENT OF REVENUE OF the STATE OF COLORADO, Defendant–Appellee.**

No. 98CA1455.

Colorado Court of Appeals,
Div. I.

Sept. 30, 1999.

Certiorari Granted May 15, 2000.

Hamilton and Faatz, P.C., Dwight A. Hamilton, Jan E. Montgomery, Christopher J.W. Forrest, Denver, Colorado, for Plaintiff–Appellant.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Christine M. Arguello, Deputy Attorney General, Carolyn Lievers, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Opinion by Judge VOGT.

Plaintiff, A.D. Store Company, Inc., d/b/a Auer's (Auer's), appeals the trial court judgment affirming the determination of the executive director of the Colorado Department of Revenue that Auer's was required to collect and remit sales tax on charges for certain alterations it made on new clothing purchased by its customers. We affirm.

Auer's is a retail clothing store that sells women's ready-made apparel and accessories. As a result of an audit, the Department determined that Auer's had failed to collect and remit sales tax due for alterations ordered and paid for at the time the customer

purchased the garment to be altered. It issued a notice of deficiency, claiming $8,402.81 for unpaid sales taxes and interest for the tax period October 1991 to August 1994.

Auer's protested the assessment and requested a hearing before the Department's executive director. At the hearing, Auer's put on testimony regarding the various circumstances in which it performs alterations for its customers. The parties stipulated that the only situation in which sales tax was being claimed was the following:

The fitting occurs at the time of the sale. The customer pays for both the garment and alterations. The price of the garment is stated on a sales receipt. The charges for alterations are stated separately on the same sales receipt.

The executive director concluded that, in that situation, the alteration charges were part of the purchase price on which sales tax was due. In arriving at this conclusion, the executive director interpreted and applied provisions from the Colorado sales tax code. He then reached the same result by analyzing the provisions of the Colorado Uniform Commercial Code (UCC) regarding passage of title for personal property in a sales transaction.

Auer's appealed, and the case was submitted to the district court for resolution based on stipulated facts. The court upheld the executive director's determination.

I.

Auer's contends that the agency and district court rulings were erroneous because the relevant statutes cannot be interpreted to permit imposition of sales tax on alterations to ready-to-wear garments sold at retail. We do not agree.

■ In reviewing an agency's construction of a statute, we must ask two questions. First, if the General Assembly has spoken directly to the precise question at issue, we, like the agency, must give effect to its unambiguously expressed intent. If, however, the General Assembly has not directly addressed the issue, the question becomes whether the agency's determination is based upon a per-

missible construction of the statute. *Colonial Bank v. Colorado Financial Services Board*, 961 P.2d 579 (Colo.App.1998).

■ We afford deference to an agency's interpretation that is both in conformity with the relevant statutory provisions and supported by the agency's reasoning and the record. *See Colorado Department of Revenue v. Woodmen of the World*, 919 P.2d 806 (Colo.1996). Further, because the Department of Revenue is charged with the administration and enforcement of state tax laws, *see* § 24–35–101, C.R.S.1999, its interpretation of tax statutes is entitled to deference. *See Hewlett–Packard Co. v. State*, 749 P.2d 400 (Colo.1988).

■ In construing tax statutes, we must apply the presumption that taxation is the rule and exemption the rare exception. The burden is on the taxpayer who claims an exemption to establish clearly the right to such exemption. *Colorado Department of Revenue v. Woodmen of the World, supra.*

Here, whether alterations are included as part of the price upon which sales tax is levied is an issue not directly addressed in the relevant statutes. Therefore, the question before us is whether the executive director's determination of this issue was based upon a permissible construction of these statutes. *See Colonial Bank v. Colorado Financial Services Board, supra.* We conclude that it was.

A.

■ Auer's first contends that the executive director's interpretation of the applicable sales tax statute, § 39–26–104, C.R.S.1999, was erroneous because alterations are a service, not tangible personal property, but are not among the services specifically subject to sales tax under §§ 39–26–104(1)(c) and (d.1), C.R.S.1999. We disagree.

Section 39–26–104(1)(a), C.R.S.1999, provides that a tax is to be collected and paid "on the purchase price paid or charged upon all sales and purchases of tangible personal property at retail." Under § 39–26–102(7)(a), C.R.S.1999, "purchase price" means the price to the consumer, exclusive of

other direct taxes imposed. Section 39–26–102(12), C.R.S.1999, provides:

> [S]ales tax is imposed on the full purchase price of articles sold after manufacture or after having been made to order and *includes the full purchase price for material used and the service performed in connection therewith,* ... Except as otherwise provided in this subsection (12), the sales price is the *gross value of all materials, labor, and service, and the profit thereon, included in the price charged to the user or consumer* (emphasis supplied).

As the executive director reasoned, these definitions contemplate that services as well as materials will be part of the purchase price of tangible personal property and thus subject to tax. Accordingly, charges for alteration services can be deemed part of the purchase price of a garment even though alteration is not among the services specifically enumerated as taxable in § 39–26–104.

*Carpenter v. Carman Distributing Co.,* 111 Colo. 566, 144 P.2d 770 (1943), upon which Auer's relies in support of its argument here, involved a different issue—namely, whether "intermediate sales" of property to laundries and dry cleaners were subject to the retail sales tax—and does not support the statutory interpretation advocated by Auer's.

### B.

Auer's next argues that levying a sales tax on alterations is inconsistent with Department regulations which, in other contexts, exclude from taxation amounts charged for labor or services rendered in connection with sales of tangible personal property if such amounts are separately stated on the seller's invoices.

Neither the executive director nor the district court addressed the relevance of these regulations to the issue presented here. While Auer's referred to the regulations in its brief in the district court, we cannot determine whether the issue was raised in proceedings before the executive director because the record of those proceedings is not part of the record on appeal.

Even if we assume the issue is properly before us, the cited regulations would not warrant setting aside the executive director's determination.

■ Most of these are special regulations for specific businesses—*e.g.,* sand and gravel retailers and upholsterers—and are, on their face, inapplicable to retail clothing sales. *See* 1 Code Colo. Reg. 201–5. One regulation, Department of Revenue Regulation No. 26–102.12, 1 Code Colo. Reg. 201–4, applies to "charges for manufacturing, producing, fabricating, and processing tangible personal property which has been made-to-order or tailor-made for the customer." However, Regulation 26–102.12 provides that any person making a sale subject to it may purchase, tax-free, all items of tangible personal property which enter into and become a component part of the article sold. There is nothing in the record to indicate that Auer's purchases tax-free the items used in making alterations, so as to bring it within the ambit of this regulation.

### C.

In its briefs on appeal, Auer's also challenged the executive director's reliance on UCC provisions relating to passing of title as an alternative basis for his ruling. At oral argument, however, counsel for both sides took the position that the UCC was inapplicable to the issue presented here. We agree that the issue can be resolved by construing the relevant provisions of the sales tax code, without reference to the UCC, and accordingly do not address the correctness of the executive director's UCC analysis.

### II.

Auer's also argues that the trial court erred in referring to the Department's "long-standing statutory construction" when there was no evidence in the record as to how the Department had interpreted the relevant statutes in the past.

We agree that the trial court's statement was incorrect. There is no evidence of such "long-standing construction" in the record before us, nor does the Department cite any such evidence in its brief.

■ Nevertheless, it does not follow from this that the court erred in affording deference to the executive director's current construction of the statutes, as announced in this case. Although deference to an agency's statutory interpretation is particularly appropriate when such interpretation is long standing, *see Hewlett–Packard Co. v. State, supra,* deference is also to be given even if there is no such long-standing interpretation. *See Colorado Department of Revenue v. Woodmen of the World, supra* (agency's statutory interpretation is entitled to deference if it is in conformity with relevant statutory provisions and is reasonably supported by agency's reasoning, even where decision conflicts with earlier agency interpretations).

Here, as discussed above, the executive director's determination that "sales price" included services for alterations was based upon a permissible construction of the statutes. Accordingly, reversal is not warranted simply because the trial court incorrectly stated that the Department had previously construed the statutes in the same way.

We similarly reject Auer's related argument that the trial court erred in relying solely on *Colorado Department of Revenue v. Woodmen of the World, supra,* a case that it contends is factually and legally inapposite. We agree that *Woodmen* involves different facts. However, the principles set forth in that case regarding judicial review of an agency's statutory interpretation are equally applicable to the issue presented here.

The judgment is affirmed.

Judge METZGER and Judge NEY, concur.