INFORMATION SERVICES, INC. *vs.* COMMISSIONER OF REVENUE.

No. 98-P-0502.

Suffolk. September 13, 1999. - November 10, 1999.

Present: PERRETTA, GREENBERG, & LENK, JJ.

*Taxation,* Abatement, Sales tax, Sales tax: exemption.

The Appellate Tax Board incorrectly concluded that certain services provided
to customers of a microfilming company were subject to sales tax, where
the services, involving preparation of records, were separable from the
tangible personal product, viz., microfilm [198-199]; moreover, the board's
conclusion that customers were not separately charged for such services
was not based on substantial evidence [199-200].

APPEAL from a decision of the Appellate Tax Board.

*William E. Halmkin* for the taxpayer.

*Daniel Alan Shapiro* for Commissioner of Revenue.

GREENBERG, J. In filing Massachusetts sales tax returns for the period December, 1988, through April, 1992, Information Services, Inc. (Information), excluded charges for "pre-camera" services that were provided to its customers prior to microfilming documents. The Commissioner of Revenue (commissioner) determined that Information was obligated to collect sales tax on these pre-camera services and assessed a tax deficiency of $34,903.

After the commissioner denied an application for abatement, Information, conforming with G. L. c. 58A, § 7, as in effect prior to St. 1998, c. 485, § 2, and G. L. c. 62C, § 39, appealed to the Appellate Tax Board (board). The board (after hearing before a single member) decided that the commissioner had rightly concluded that sales tax was payable on the services. We reverse the decision of the board.

The record before us includes an agreed statement of facts, the transcript of the hearing before the single commissioner, and the findings of the board and report. Our review of the board's

decision is limited to questions of law. See *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 601 (1986); *Kennametal, Inc.* v. *Commissioner of Rev.*, 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998). While we are bound by the board's findings of fact, see G. L. c. 58A, § 13, we may "consider whether, as a matter of law, the board's factual findings are supported by substantial evidence." *Towle* v. *Commissioner of Rev.*, *supra* at 602.

In summary, these are the facts found by the board. Information operates a business that converts customer records from paper into microfilm or microfiche and offers optional services to these customers such as alphabetizing documents, staple removal, and shredding. In preparing its sales tax returns for the period in question, Information excluded customer payments for these additional services. The board found that the term "pre-camera" did not appear on customer invoices and, therefore, customers were not charged separately for pre-camera services. It rejected Information's claim that the designation "hours preparation," which does appear on customer invoices, shows that optional services were separately billed.

The rules governing the taxation of sales at retail of tangible personal property are set out in G. L. c. 64H, § 2. Exempted from this tax are "professional, insurance, or personal service transactions which involve no sale or which involve sales as inconsequential elements for which no separate charges are made." G. L. c. 64H, § 1. The board determined that the pre-camera services at issue here were part of the sale of microfilm and, therefore, not excluded from tax as personal service transactions.

We conclude that the decision is based on an incorrect application of the law. The board mistakenly relies on *Houghton Mifflin Co.* v. *State Tax Commn.*, 373 Mass. 772 (1977), where a book publisher asserted its purchase of type composition was nontaxable. It claimed it was paying for the service of creating the composition, not the finished product itself. The court held that "*where the services and the property are inseparable, because of the integrated nature of the transaction,* the character of the transaction must be analyzed to ascertain whether the buyer's basic purpose was to acquire the property which was sold to it, or to obtain the services." *Id.* at 774 (emphasis supplied). The predicate for application of this "basic purpose" test is that the services and the property be inseparable because

of the integrated nature of the transaction. See, e.g., *Commissioner of Rev.* v. *McGraw-Hill, Inc.*, 383 Mass. 397, 402 (1981) (basic purpose test applied to sales of market reports where information gathered on reports was tailored to customer specifications). This test applies where services and property are inseparable "because the services created the property." *Browning-Ferris Indus., Inc.* v. *State Tax Commn.*, 375 Mass. 326, 329 (1978).

Where the product and the service are separable, however, *Houghton Mifflin* does not apply. Microfilming and pre-camera services are readily separable. The first is a sale of tangible personal property: one person says to another, "Take this, make very small photographs of it on a thing called microfilm, and then give me the microfilm." The second is a service which does not involve a sale of tangible personal property: one person says to another, "Take this and organize it for me." The service does not create the property in the latter circumstance.

Microfilming can be done without alphabetizing or removing staples. For the periods at issue, somewhere between fifty and seventy percent of Information's customers purchased microfilming without contracting to have those documents arranged alphabetically or numerically. Alphabetizing and removing staples can be done without microfilming. For the periods at issue, approximately thirty percent of Information's customers purchased various pre-camera services for their records, but had nothing microfilmed. Because of this ready separability, the threshold requirement for the basic purpose test is not met. The board's decision is based on an incorrect application of the law.

A further difficulty with the board's approach is its finding that the term "pre-camera" does not appear on customer invoices and therefore customers were not charged separately for pre-camera services. That finding was not based on substantial evidence. The tax examiner for the Department of Revenue assigned to audit Information stated on direct examination that the term "pre-camera" was created by Information's accountant during the audit. Information is in accord that the term does not appear on customer invoices. It argues persuasively that it could not have appeared there, since the term was not created until four years after the invoices were sent to customers. Kathleen Locke-Berger, president of Information, testified that during the time period at issue such charges were listed separately on invoices under the heading "hours

preparation." She explained that the heading "hours preparation" on customer invoices is the generic term for whatever services were provided outside of microfilming, whether it be staple removal, alphabetizing, culling, or something else. The commissioner had agreed that some of the items included under this heading were nontaxable, but believed others to be taxable, leading Information's accountant to coin the term "pre-camera" to distinguish the disputed items from the others which fell under the heading "hours preparation." No alternative explanation for the meaning of the term "hours preparation" appears in the record.

Despite this, the board rejected the claim that "hours preparation" is the name under which pre-camera services were listed on invoices. In a footnote to its decision, the board theorized that, "if that were the case there would not be any need for a complicated calculation of the amounts attributable to the so-called pre-camera services. Instead, the charges for 'hours preparation' could simply be added together to determine the charge for pre-camera services." That conclusion conflicts with Locke-Berger's undisputed testimony that the "hours preparation" charge included all charges for any services performed outside of microfilming, some of which were agreed by the commissioner to be nontaxable. Hence, simply adding up the charges for "hours preparation" would have resulted in taxing items the commissioner agreed were nontaxable. With this explanation for the board's puzzlement and the lack of any contradictory evidence in the record, the board's finding that customers were not charged separately for pre-camera services is not based on such evidence as a reasonable mind might accept as adequate to support a conclusion.

We hold as a matter of law that the board incorrectly decided that Information's charges for pre-camera services were subject to the sales tax. Accordingly, the decision of the board is reversed. We remand the case to the board for recalculation of the tax.

*So ordered.*