**A.D. STORE COMPANY, INC., a Colorado corporation, d/b/a Auer's, Petitioner,**

**v.**

**EXECUTIVE DIRECTOR OF the DEPARTMENT OF REVENUE OF the STATE OF COLORADO, Respondent.**

No. 99SC861.

Supreme Court of Colorado, En Banc.

Jan. 29, 2001.

---

Hamilton and Faatz, A Professional Corporation, Dwight A. Hamilton, Jan E. Montgomery, Christopher J.W. Forrest, Michael E. Gurley, Denver, CO, Attorneys for Petitioner.

Ken Salazar, Attorney General, Carolyn Lievers, Assistant Attorney General, Business and Licensing Section, Denver, CO, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We accepted certiorari in this case to address the imposition of sales tax on alteration services performed by a retail clothing store. We conclude that the alterations are not taxable under the applicable statute, and therefore reverse the court of appeals.

I.

A.D. Store Company, Inc. d/b/a Auer's operates a specialty retail women's clothing store in the Cherry Creek North area of Denver, Colorado. Auer's sells only fully manufactured, not custom-tailored, clothing, and also offers alteration services on those garments. Auer's had a practice of separately noting the price of the alteration services on the clothing invoice, and assessing sales tax only on the price of the garment and not on the cost of the alteration services. In October of 1994, Auer's received a Notice of Deficiency from the Colorado Department of Revenue for the tax period of October 1991 to August 1994, which assessed sales tax on the alteration services when they were part of the initial purchase.

Auer's filed a timely Protest and Request for Hearing. An administrative hearing took place on April 25, 1996 before Renny Fagan, Executive Director of the Department. The Executive Director issued a Final Determination on February 4, 1997, affirming the Notice of Deficiency. The Director found that there were four situations in which alteration charges could be at issue. The first was when the fitting occurred at the time of the sale and the alteration labor was therefore reflected on the original sales ticket. The second situation was when the customer purchased the garment, left it at the store and returned at a later date for a fitting and eventual alterations. The third was when a customer returned a previously purchased item for alterations, and the fourth was when someone purchased an item as a gift and the recipient returned at a later date for alterations. The Director concluded as a matter of law that only alterations done in connection with the sale of a garment should be subject to sales tax.[1] He found that no sales tax

---

1. He also found significant the fact that Auer's gave customers full credit for returned merchandise, including a refund for alteration charges.

would be appropriate for alterations arranged in circumstances separate from the initial purchase. He grounded his conclusions in an interpretation of the sales tax statute, and also in the Uniform Commercial Code. As to the latter, he reasoned that the "title" to the garment did not pass until the customer was satisfied with the altered garment.

Auer's appealed that ruling to the Denver district court under section 39–21–105, 11 C.R.S. (2000). The parties stipulated to the relevant facts, and submitted the matter for a determination of law. The district court judge deferred to the Department's conclusion that the cost of the new clothing was equal to the price of the item plus the alteration charge, and therefore affirmed the assessment embodied in the Notice of Deficiency.

Auer's next appealed to the court of appeals. The court of appeals also affirmed the Department's determination. *See A.D. Store Co., Inc. v. Executive Dir. of the Dep't of Revenue,* 997 P.2d 1241 (Colo.App.1999). The court of appeals read the applicable statute to support the assessment of sales tax on some services to the extent those services are performed in connection with the sale. The court distinguished on a factual basis certain Department of Revenue regulations cited by Auer's for the proposition that labor or services rendered in connection with the sale of tangible personal property is not taxable if separately stated on the seller's invoices.

Lastly, the court of appeals declined to address the question of whether the Uniform Commercial Code (UCC) impacts the analysis of the issues on the grounds that both parties conceded that they were not basing their position on the UCC.

We granted certiorari [2] and now reverse the court of appeals.

## II.

The sales tax statute reads as follows:

[T]he sales tax is imposed on the full purchase price of articles sold after manufacture or after having been made to order and includes the full purchase price for material used and the service performed in connection therewith, .... the sales price is the gross value of all materials, labor, and service, and the profit thereon, included in the price charged to the user or consumer.

§ 39–26–102(12), 11 C.R.S. (2000). "Purchase price" means the price to the consumer. § 39–26–102(7)(a).

Colorado applies its sales tax provisions broadly, with taxation the rule and exemption the exception. *Sec. Life & Accident Co. v. Heckers,* 177 Colo. 455, 458, 495 P.2d 225, 226 (1972). However, when interpreting a statute, the court must honor the plain meaning of the words when they are clear. § 2–4–101, 1 C.R.S. (2000). Accordingly, we must begin with the proposition that the purchase of personal services is generally not subject to taxation in Colorado. Rather, Colorado taxes the purchase of tangible personal property, valued by its sales price.

### A.

We find support for this position in the statute itself and in the Department's Regulations. First, the statute does specifically permit the taxation of certain services, such as telephone and telegraph services and gas and electric service. § 39–26–104(1)(c),(d.1), 11 C.R.S. (2000). The inclusion of specific services implies the exclusion of other services. *See Black's Law Dictionary* 602 (7th ed.1999) (defining the canon of construction *"expressio unius est exclusio alterius"*).

Second, the Colorado Code of Regulations supports the conclusion that services are generally not subject to sales tax. Regulation 26–102.12 provides in its first paragraph:

Sales and use tax applies to charges for manufacturing, producing, fabricating and processing tangible personal property which has been made-to-order or tailor-

---

2. We granted certiorari on the following issue: Whether the court of appeals erred in upholding the imposition of a sales tax on alterations to a

ready-to-wear garment when the alterations are ordered at the time of purchase.

made for the customer. Manufacturing, producing, fabricating or processing is usually deemed to have occurred when tangible personal property is created, transformed or reduced to a different state, quality, form, property or thing. Transformation may occur by hand, machine, art, chemical action or natural means.

1 Colo.Code Regs. § 201–4, Reg. 26–102.12 (1986). Similarly, the third paragraph reads:

The amount charged the purchaser for labor or services rendered in installing and applying purchased tangible personal property is not subject to tax; provided, that such amount is separately stated and such statement is not to avoid the tax upon the actual sales price of tangible personal property.

*Id.*

Sales tax is accordingly assessed "[o]n the purchase price paid or charged upon all sales and purchases of tangible personal property at retail." § 39–26–104(1)(a). The Department of Revenue Regulation defines "tangible personal property" as embracing "all goods, wares, merchandise, products and commodities, and all tangible or corporeal things and substances which are dealt in, capable of being possessed and exchanged, except newspapers excluded by the law." 1 Colo.Code Regs. § 201–4, Reg. 26–102.15 (1986).

■ For example, the Department does not impose sales tax on services incidental to the sale, such as delivery services of sand and gravel. 1 Colo.Code Regs. § 201–5 (1986). Similarly, the Department does not tax the personal services of an upholsterer in recovering an item of furniture, but rather taxes the material the upholsterer uses in the process. *Id.* The regulations do provide for imposition of sales tax on an item of furniture when the upholsterer purchases the furniture himself or herself, reupholsters it and then sells it to the customer. In that circumstance, the customer purchases an item that comprises various services as well as various products: the furniture itself, the labor required to manufacture the fabric, and the labor required to apply the fabric to the furniture. The customer purchases the final product from the upholsterer in that circumstance, and the customer has had no involvement in the transaction prior to the completion of the final product. Here, the customer purchased the item "off the rack." Like the upholstery example, the customer also contracted for alterations services to tailor the garment to her specifications. That contract represents services incidental to the sale of the garment.

■ We read the sales tax statute and applicable regulations to provide that no service is taxable, except those services specifically listed in the statute itself; and services rendered in "installing" or "applying" personal property are not taxable. Indeed, in 1943, when called upon to interpret a strikingly similar version of the sales tax statutes, we concluded that "the term[s] 'service' or 'services ... furnished' are inclusive only of services specifically listed as being subject to taxation and taxable under the sales tax law." *Carpenter v. Carman,* 111 Colo. 566, 573, 144 P.2d 770, 773 (1943).

### B.

■ The Department argues that the alteration services agreed to at the time of the purchase of the garment were not really services but were a part of the purchase transaction. In other words, the Department argues that the purchase of the item was in an "as altered" state, and that, therefore, the alteration services comprised a portion of the purchase price.

Thus, we must examine whether the alteration services undertaken at the time of purchase of the garment are indeed part of the purchase price of the garment, or are personal services separately contracted for.

■ First, we conclude that the services referenced in the sales tax statute as "service performed in connection" with the sale refers to all of the services that went into the creation or construction of the article. The sales price necessarily includes some value attributable to those services and comprehends all services that predated the point at which the item is offered for sale. The services mentioned in the statute are not sepa-

rate, additional services on which tax is to be assessed.

■ Massachusetts has adopted a test that we find useful in determining the taxable nature of personal services in a circumstance such as the one before us today. The test inquires whether the services and product are separable. If they are separable, then the service is not taxable. If the service and product are inseparable, then the services are taxable as a part of the purchase price. *Houghton Mifflin Co. v. State Tax Comm'n,* 373 Mass. 772, 370 N.E.2d 441, 442 (1977) (concluding that the purchase of galley proofs was taxable, even though services comprised a significant portion of the transaction); *Info. Servs., Inc. v. Comm'n of Revenue,* 48 Mass.App.Ct. 197, 718 N.E.2d 1256, 1258 (1999) (concluding that the optional services associated with microfilming such as shredding and alphabetizing were not taxable because they were separable from the ultimate sale of the microfilmed materials). Similarly, without referencing the Massachusetts test, but based on the same rationale, the South Carolina Supreme Court has concluded that gift wrapping services are not part of the sale as the services are separable from the purchase. *Meyers Arnold, Inc. v. South Carolina Tax Comm'n,* 285 S.C. 303, 328 S.E.2d 920, 922–23 (1985); *see also Sharp v. Park 'N Fly of Tex., Inc.,* 969 S.W.2d 572, 575 (Tex.Ct.App.1998) (holding that the cost of a shuttle service provided by an off-site parking lot business near an airport from the lot to the terminal was not exempt from sales tax because the transportation was incidental to the actual business of supplying parking places).

Here, we conclude that the alteration services were separable from the sale of the garment. Indeed, even the Department agreed that it would not tax the alteration services unless they were contracted for at the time of the initial purchase. If the customer left the store and came back for a later fitting, then the Department would not tax the services. What is clear, then, is that the customer is buying the garment, and the

alteration services are separable from the transaction. Whether contemplated at the time of the sale, or some time thereafter, the services themselves would remain exactly the same. The alteration services were separable from the purchase transaction and, as such, were not independently taxable.

### III.

Accordingly, we conclude that the sales tax statute does not permit taxation on this particular service.[3] We reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

Chief Justice MULLARKEY dissents, and Justice HOBBS and Justice MARTINEZ join in the dissent.

Chief Justice MULLARKEY, dissenting.

The court today holds that the sales tax statute does not permit taxation on alteration services performed by a retail clothing store because the alterations are separable from the purchase of the garment. According to the court's holding, the alterations are separable from the purchase transaction regardless of when the alterations are performed on the garments.

In my opinion, alterations performed in connection with the sale of a garment and completed prior to a customer taking possession of the garment are part of the same purchase transaction and therefore, should be subject to the sales tax. Accordingly, I respectfully dissent.

### I.

The sales tax statute relevant to these proceedings provides that:

[T]he sales tax is imposed on the full purchase price of articles sold after manufacture or after having been made to order and includes the full purchase price for material used and the service performed in connection therewith, ... [T]he sales price is the gross value of all materials, labor, and service, and the profit thereon, includ-

---

**3.** Having so concluded, we need not reach any issue raised under the Uniform Commercial Code.

ed in the price charged to the user or consumer.

§ 39–26–102(12), 11 C.R.S. (2000). The sales tax is assessed "[o]n the purchase price paid or charged upon all sales and purchases of tangible personal property at retail." § 39–26–104(1)(a). Regulations promulgated by the Department of Revenue define "tangible personal property" as including "all goods, wares, merchandise, products and commodities, and all tangible or corporeal things and substances which are dealt in, *capable of being possessed and exchanged,* except newspapers excluded by the law." 1 Colo.Code Regs. § 201–4, Reg. 26–102.15 (1986)(emphasis added).

I would establish a test that determines the taxability of a transaction involving both a sale of goods and a rendition of services based on the ownership of the goods at the time of the rendition of the service. In cases where the service is undertaken at the time of the sale—i.e., when the customer does not own the property prior to the service being completed-the sale of the property and the rendition of services become part of the same purchase transaction and therefore are taxable as part of the original purchase price. Likewise, in cases where the customer completes the sale prior to contracting for the rendition of services, the performance of the service operates as a separate transaction and is not taxable. This distinction is supported by the plain language of the Department of Revenue regulations, which define "tangible personal property" as property "capable of being possessed or exchanged."

By applying the Uniform Commercial Code to these facts, I would reach the same conclusion: that alterations completed at the time of the original purchase transaction are taxable. The applicable Code provision that refers to the passage of title for personal property in a purchase transaction provides:

(3) Unless otherwise explicitly agreed, where delivery is to be made without moving the goods:

(a) If the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

(b) If the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

§ 4–2–401(3), 2 C.R.S. (2000). The official comment to this provision explains that "the factual situations in subsection ... (3) upon which passage of title turn actually base the test upon the time when the seller has finally committed himself in regard to specific goods." § 4–2–401, cmt. 4.

In this case, where alterations are undertaken at the time of the sale of a garment, title does not pass until the alterations have been made to the customer's satisfaction. When the garment is accepted by the customer, title passes and the transaction is complete. Since the purchase transaction is not complete until after the alterations have been made and the customer has accepted the garment, the alterations are a part of the same transaction and are taxable. Thus, applying the Uniform Commercial Code to this case further supports the conclusion that alterations performed in connection with the sale of a garment and conducted prior to a customer taking possession of the garment are part of the same purchase transaction and therefore, should be subject to Colorado's sales tax statute.

## II.

The majority summarily concludes that the alterations in this case are "separable" from the sale of the garment. The majority refers to tests formed by several other jurisdictions concerning the taxable nature of transactions combining a sale of products and a rendition of personal services, but emerges with no clear test of its own.

The majority first cites the test set forth in two Massachusetts cases, *Houghton Mifflin Co. v. State Tax Commission,* 373 Mass. 772, 370 N.E.2d 441 (1977) and *Information Services, Inc. v. Commissioner of Revenue,* 48 Mass.App.Ct. 197, 718 N.E.2d 1256 (1999). Maj. op. at 684. This test determines whether services are taxable under Massachusetts's sales tax act based on whether the products and the services are "separable" or "inseparable." *Houghton Mifflin,* 370 N.E.2d at

442; *Information Servs.*, 718 N.E.2d at 1257.[1]

The majority also mentions the test established in *Sharp v. Park 'N Fly of Tex., Inc.*, 969 S.W.2d 572 (Tex.Ct.App.1998). Maj. op. at 684. The Texas Court of Appeals determined that when calculating the amount of sales tax owed on a transaction that includes both a sale and a service—in that case a car parking business that provided parking and airport transportation to its customers—a court should consider whether the service of transportation is "incident to" the parking. *Sharp*, 969 S.W.2d at 575.

Without reaching a definitive conclusion as to which test should be adopted by the Colorado courts, and how such a test should be applied, the court today concludes that "the alteration services were separable from the sale of the garment." Maj. op. at 684. This conclusion fails to provide any guidance to courts for determining whether a transaction involving both a sale of goods and a rendition of services is taxable under the sales tax statute.

### III.

The majority cites four situations in which charges for alterations are at issue: (1) the customer's fitting occurs at the time of the sale and the alteration labor is reflected on the original sales ticket; (2) the customer purchases the garment, leaves it at the store and returns later for a fitting and eventual alterations; (3) the customer returns a previously purchased item for alterations; or (4) a customer purchases an item as a gift and the recipient returns later for alterations. Maj. op. at 681–82. The majority holds that these

alteration services should be treated identically, for the purposes of the sales tax statute, even though they are contracted for at different times relative to the time of the original sale. *Id.* at 684.

I disagree. I would distinguish situations where the alterations are undertaken at the time of the sale of a garment, and hold that alterations in this type of situation are part of the original purchase transaction and therefore are taxable as part of the original purchase price. In this instance, the alterations are performed to complete the sale of a particular garment and are necessary to make it salable. A customer in this situation also may reject the altered garment and receive a refund for the returned garment. These circumstances show that when alterations are connected to the original sale, the garment and the alterations are part of the same transaction and should be taxed accordingly.

The majority argues that the Department of Revenue does not impose sales tax on services that are incidental to the sale of property. *Id.* at 683. There is no regulation directly addressing the alteration of clothing; as such, the majority cites Colorado regulations governing upholsterers as support for its contention. *Id.* The majority asserts that only the material used by an upholsterer is taxable, and that the services of an upholsterer in repairing a piece of furniture are not taxable. *Id.* This interpretation, however, conflicts with the plain language of these regulations. *See* 1 Colo.Code Regs. § 201–5 (1986). The regulations specifically distinguish situations where an upholsterer reupholsters furniture that already belongs to the

---

1. The majority also refers to the South Carolina Supreme Court's decision in *Meyers Arnold, Inc. v. South Carolina Tax Comm'n*, 285 S.C. 303, 328 S.E.2d 920 (App.1985), as concluding that "gift wrapping services are not part of the sale as the services are separable from the purchase." Maj. op. at 684. The court in that case, however, did not reach the issue of separability in regards to the store's gift wrapping policy. The store in *Meyers* offered free gift wrapping of goods purchased by its customers, provided that a certain quality of wrapping paper was used. If the customer preferred a higher quality wrapping paper, the customer had to pay a fee. In determining whether the extra charge collected by the store

was for the gift wrapping service (and therefore taxable under South Carolina's Tax Commission regulations on gift wrapping), or for the sale of wrapping paper (and therefore exempt from tax), the court concluded:

> It is clear from the stipulated facts that the charge is for the higher quality paper and not for the wrapping services. A customer can have his purchase gift wrapped at no charge if he chooses the lower quality paper. This refutes any argument that the charge is for the service of wrapping.

*Meyers Arnold*, 328 S.E.2d at 922. Thus, *Meyers* does not provide any guidance for the case at bar.

customer, and situations where an upholsterer purchases furniture, reupholsters it, and then sells it to a customer. *Id.* In the former situation, the upholsterer may only charge the customer sales tax on the material used to perform the service. *Id.* In the latter situation, however, the upholsterer is required to charge sales tax on the entire selling price of the item of furniture. *Id.* For these reasons, I believe that the majority's reliance on the upholstery regulations for support is misplaced. The distinction that the Department of Revenue has drawn for garment alterations is the same distinction that it has drawn for reupholstering furniture. Therefore, we should defer to the expertise of the Department of Revenue in applying the sales tax statute. *Colo. Dep't of Revenue v. Woodmen of the World,* 919 P.2d 806, 817 (Colo.1996); *Hewlett–Packard v. State, Dep't of Revenue,* 749 P.2d 400, 406 (Colo.1988).[2]

Because I believe that alterations contracted for at the time of the sale of the garment are part of the original purchase transaction, rather than personal services separately contracted for, I would hold that such alterations are taxable as part of the purchase price of the garment.

I am authorized to state that Justice HOBBS and Justice MARTINEZ join in the dissent.

2. In addition, the majority's reliance on regulations concerning sand and gravel is unpersuasive. *See* Maj. op. at 683. A fundamental difference between the service of hauling sand and gravel and the alterations performed in this case is that the delivery services mentioned in the sand and gravel regulations do not alter the material or product being delivered. *See* 1 Colo. Code Regs. § 201–5 (1986). Furthermore, sales tax is applied to the delivery charges for the sand and gravel unless the purchaser expressly states that he is the *owner* of the sand or gravel at a time prior to delivery. *Id.* Therefore, as with the upholstery regulations, the threshold determination as to whether the service is taxable depends on the time of the passage of title relative to the time of the performance of the service.